Argued June 6, affirmed October 12, 1966, United States Supreme Court denied certiorari May 18, 1967

CORVALLIS SAND & GRAVEL CO., *Appellant, v.* HOISTING AND PORTABLE ENGINEERS ET AL, *Respondents.*

EUGENE SAND & GRAVEL, INC., *Appellant, v.* HOISTING AND PORTABLE ENGINEERS ET AL, *Respondents.*

WILDISH SAND & GRAVEL CO., *Appellant, v.* HOISTING AND PORTABLE ENGINEERS ET AL, *Respondents.*

419 P. 2d 38

*James H. Clarke,* Portland, argued the cause for appellants. With him on the brief were McColloch, Dezendorf & Spears and Lewis K. Scott, Portland.

*Clifford D. O'Brien,* Portland, argued the cause for respondents other than trustees. With him on the brief was Bernard Jolles, Portland.

*Hugh L. Barzee,* Portland, argued the cause for respondent trustees. On the brief were Barzee, Leedy & Tassock, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

HOLMAN, J.

Three identical suits in equity have been combined for the purpose of this appeal. In each instance the defendants are the Hoisting and Portable Engineers Local Union No. 701, the trustees of the union's health and welfare fund, and the trustees of its pension fund. The plaintiffs are three employers who individually entered into collective bargaining agreements with the defendant union. The relief sought is rescission of the agreements, restitution of the sums paid thereunder, and an accounting to determine the amounts so paid. Plaintiffs sought to recover from the union the additional wages paid to its members, and from the health and welfare trustees and pension trustees the sums paid to their respective funds for the benefit of members of the union. Plaintiffs have appealed in each case from the trial court's dismissal of their complaints when they refused to plead further following the sustaining of defendants' demurrers.

Plaintiff's complaints in each instance alleged as follows:

"V.

"* * * defendant, Local 701, engaged in a course of conduct involving threats, duress and coercion against plaintiff. Such conduct consisted of picketing, threats of picketing, strike action and threats of strike action. By such conduct, Local 701 * * * obtained and coerced a separate contract or purported contract from plaintiff * * *.

"VI.

"Said course of conduct of defendant Local 701 * * * was found to be illegal and in violation of federal law by the National Labor Relations Board by its determination which was duly made and which was issued March 13, 1963. The National

Labor Relations Board  \*  \*  \*  ordered that said separate contract or purported contract was illegal, voided, set aside and of no effect.

"VII.

"As a consequence of said  \*  \*  \*  voided contract, and as a direct and proximate consequence of defendant Local 701's conduct \*  \*  \* as above described, plaintiff has paid to  \*  \*  \*."

The grounds for the demurrers were that the court did not have jurisdiction over the subject matter and that the complaints did not state causes of suit. Defendants claimed the trial court lacked jurisdiction because the subject matter is pre-empted by the Labor Management Relations Act (LMRA) to the exclusive jurisdiction of the National Labor Relations Board (the Board) and that the complaint did not state a cause of suit because it showed plaintiffs sought, obtained and accepted relief from the Board without asking for the relief sought by the present suits.

The principal issue involved in this case is whether Congress has so pre-empted to the Board the field of labor relations as to deprive state courts of authority to grant the relief of rescission here sought. The plaintiffs charged before the Board, and the Board found, that the union was guilty of unfair labor practices under the Labor Relations Management Act, 61 Stat 141, § 8(b) (1) (B) and (3) (1947), 29 USC § 158(b) (1) (B) and (3) (1964). The unfair practices were refusing to bargain collectively with a multi-employer group of which plaintiffs were members, and by strikes and threats of strikes coercing plaintiffs into breaking way from such group and contracting with the union independently.

In determining the intent of Congress concerning

pre-emption the Supreme Court of the United States used the following language in *Garner v. Teamsters Union,* 346 US 485, 490-491, 74 S Ct 161, 98 L ed 228 (1953), which was quoted with approval in *San Diego Bldg. Trades Council v. Garmon,* 359 US 236, 242-243, 79 S Ct 773, 3 L ed2d 775 (1959):

> " 'Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. . . .' "

█ There can be no doubt that the Board had the exclusive authority to determine whether the actions of the union were unfair labor practices under the Act. Plaintiffs do not otherwise contend. Having found that the union was guilty of unfair labor practices, is the fashioning of the remedy for these infractions of labor ethics within the sole province of the Board, or may state courts decree the contract is rescinded from its inception?

In *San Diego Bldg. Trades Council v. Garmon,* supra, the court said:

> "* * * Our concern is with delimiting areas

of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme. See Garner v. Teamsters Union, 346 US 485, 492-497. It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern. In fact, *since remedies form an ingredient of any integrated scheme of regulation,* to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict." (359 US 246-247) (Emphasis added.)

Again, in *I. A. of M. v. Labor Board,* 311 US 72, 82, 61 S Ct 83, 85 L ed 50 (1940), the court without any dissent said as follows:

"* * * Where as a result of unfair labor practices a union cannot be said to represent an uncoerced majority, the Board has the power to take appropriate steps to the end that the effect of those practices will be dissipated. That necessarily involves an exercise of discretion on the part of the Board—discretion involving an expert judgment as to ways and means of protecting the freedom of choice guaranteed to the employees by the Act. *It is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged.* National Labor Relations

Board v. Pennsylvania Greyhound Lines, 303 US 261, 271; National Labor Relations Board v. Falk Corp., 308 US 453, 461. * * *" (Emphasis added.)

The determination of the relief to which a party to a collective bargaining agreement may be entitled, where the agreement was obtained by unfair labor practices, is sufficiently important in the regulatory process as to be within the sole province of the Board. There would be no logical distinction between regulation by a remedy such as injunction or an action for damages, on the one hand, and a remedy such as the return of benefits received under the contract through rescission on the other.

This is not a situation where the activity regulated was a merely peripheral concern of the LMRA,[1] nor did it relate to the vindication of interests which were deeply rooted in local feeling and responsibility in which there were, therefore, overriding state interests.[2] No one has called to our attention any Oregon regulation or common law requiring a union to bargain collectively with a multiemployer group or preventing a union from striking for the purpose of making an employer bargain separately with it where a labor dis-

[1] Linn v. United Plant Guard Workers, 383 US 53, 86 S Ct 657, 15 L ed2d 582 (1966); San Diego Bldg. Trades Council v. Garmon, 359 US 236, 79 S Ct 773, 3 L ed2d 775 (1959); International Asso. Machinists v. Gonzales, 356 US 617, 78 S Ct 923, 2 L ed2d 1018 (1958).

[2] Linn v. United Plant Guard Workers, supra note 1; Association of Journeyman v. Borden, 373 US 690, 83 S Ct 1423, 10 L ed2d 638, rehearing den., 375 US 872, 84 S Ct 28, 11 L ed2d 101 (1963); San Diego Bldg. Trades Council v. Garmon, supra note 1; Youngdahl v. Rainfair, 355 US 131, 78 S Ct 206, 2 L ed2d 151 (1957); Automobile Workers v. Russell, 356 US 634, 78 S Ct 932, 2 L ed2d 1030 (1958); Auto Workers v. Wisconsin Board, 351 US 266, 76 S Ct 794, 100 L ed 1162 (1956); United Workers v. Laburnum Corp., 347 US 656, 74 S Ct 833, 98 L ed 1025 (1954).

pute exists. There is no state right which the court is requested to vindicate.

■ The plaintiffs urge that the rescission of the agreements and recovery of the additional sums paid thereunder "are contractual consequences of the Board's determination" and that the granting by a state court of the relief sought would not interfere with, but rather aid and be in conformance with the Board's policy. They point out that state courts are always available to vindicate federally-created rights.

■■ If it was the Board's belief that the "expunging" of the union's prior unfair labor practices required the union to make restitution of the additional money paid its members, the Board would have so ordered. Congress delegated the following authority to the Board where unfair labor practices were involved:

"* * * If * * * the Board shall be of the opinion that any person * * * has engaged in * * * any * * * unfair labor practice, then the Board * * * shall issue * * * an order requiring such person to cease and desist from such unfair labor practice, *and to take such affirmative action* including reinstatement of employees with or without back pay, *as will effectuate the policies of this subchapter* * * *." 61 Stat 147, § 10(c), 29 USC § 160(c) (1947). (Emphasis added.)

The restitution of money paid as a result of a contract entered into because of unfair labor practices would certainly come within "* * * such affirmative action * * * as will effectuate the policies of this subsection * * *." A cease and desist order may be a reparation order operating retrospectively. *National Labor Rel. Bd. v. Williamson-Dickie Mfg. Co.,* 130 F2d 260, 263 (5th Cir 1942). The Board's failure to order restitution indicates its belief that in this instance federal labor policy did not require it.

■ Plaintiff makes the contention that the Board had no jurisdiction over the trustees and that therefore there could be no pre-emption of plaintiff's claim against the trustees. Presuming the Board had no jurisdiction over the trustees, there is still no basis for relief against the trustees in court. Restitution from the trustees would be as much regulation of federal labor policy concerning unfair labor practices as would restitution by the union. The trustees are third-party beneficiaries of the contract between plaintiffs and the union. If, in the opinion of the Board, federal labor policy does not require the union, which was a party to the contract, to make restitution, there is no basis for asserting that the trustees should be required to do so by a state court where no state law or policy is offended. As has been previously quoted in this opinion from *Garmon*: "* * * since remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant *a remedy* here *which has been withheld from the National Labor Relations Board* only accentuates the danger of conflict." (Emphasis added.)

Plaintiffs contend that their complaints state a cause of suit under 61 Stat 156, 301(a) (1947), 29 USC § 185(a) (1964). The subsection provides:

"(a) Suits *for violation* of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (Emphasis added.)

In *Dowd Box Co. v. Courtney,* 368 US 502, 82 S Ct

519, 7 L ed2d 483 (1962), the court held that the mention of the federal district court in this statute did not operate to divest a state court of jurisdiction.

The pre-emption doctrine has no application to cases under § 301(a) LMRA even though the violation of the contract is also an unfair labor practice. *Smith v. Evening News Assn.*, 371 US 195, 197, 83 S Ct 267, 9 L ed2d 246 (1962); *Teamsters Local v. Lucas Flour Co.*, 369 US 95, 101 n. 9, 82 S Ct 571, 7 L ed2d 593 (1962); *Lodge No. 12, International Asso. of Machinists v. Cameron Iron Works*, 257 F 2d 467 (5th Cir), cert. den., 358 US 880, 79 S Ct 120, 3 L ed2d 110 (1958).

It has been held that suits for reformation of a contract,[3] for specific performance,[4] for declaratory relief determining the contract to be valid and for damages for its breach,[5] for a declaratory judgment that a provision of the contract is unenforceable because compliance would be an unfair labor practice,[6] and to enjoin violation,[7] are all within the term "suits for violation of contracts" as contemplated by the statute.[8]

---

[3] International Asso. of Machinists v. United Aircraft Corp., 190 F Supp 464 (DC Conn 1961).

[4] Independent Petroleum Workers of N. J. v. Esso Stand. Oil Co., 235 F 2d 401 (3d Cir 1956).

[5] Dowd Box Co. v. Courtney, supra.

[6] Todd Shipyard Corp. v. Industrial Union of Marine, etc., 344 F2d 107 (2d Cir 1965).

[7] Humphrey v. Moore, 375 US 335, 84 S Ct 363, 11 L ed2d 370 (1964).

[8] This opinion has treated the suit against the *union* as one for rescission and restitution. It was unnecessary to decide whether it might in fact be a tort action for damages occasioned to the employers because of coercive practices which resulted in the employers paying money to the union's individual members. No money was paid to the union as such but only to individual employees. If in fact it is a tort action, § 301(a) would have no application. Rock Drilling, Blasting, etc. v. Mason & Hanger

■ The present suits are to rescind the contracts involved, not for their violation. No substantive contract right is being asserted which the court is asked to remedy. The relief requested is directed to the rescission of the contract because of unfair labor practices rather than the enforcement of any rights thereunder. No case has come to our attention where a suit to rescind such a contract was held to be within the statute's purview.[⑨] To apply § 301(a) LMRA to suits to rescind labor contracts because of unfair labor practices in their procurement would open to regulation by courts almost the entire field of unfair labor practices. We do not believe this was the intention of Congress. The words of the statute have been given a broad construction, but if any significance is to be given to the words "for violation of contracts" a suit such as the present one does not come within its embrace.

The judgment of the trial court is affirmed.

---

Co., 217 F2d 687 (2nd Cir 1954); Burlesque Artists Assn. v. I. Hirst Enterprises, 134 F Supp 203 (DC Pa 1955). If it is in fact a damage action against the union because of unfair labor practices, pre-emption would also prevent its prosecution. San Diego Bldg. Trades Council v. Garmon, supra.

⑨ A case, which might be construed as indicating a suit for rescission under § 301(a) is not proper, is Adams v. Budd Co., 349 F2d 368 (1965). There the court indicated that actions of parties in entering into a labor contract which violated existing rights were not violations of contract as contemplated by § 301(a). The court said as follows:

"Here the plaintiffs do not seek redress for violation *of* a collective bargaining agreement; what they seek is redress for an alleged violation *by* a labor contract of rights which they assert were independently, and pre-agreement, vested in them by their 'contract of hire.'" (Emphasis added.)