Argued and submitted April 7, affirmed April 21, 1971

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 701, *Appellant, v.* BRADY-HAMILTON STEVEDORE COMPANY, *Respondent.*

483 P2d 1303

*Don S. Willner*, Portland, argued the cause for appellant. With him on the briefs were Willner, Bennett & Leonard, Portland.

*Gary R. Bullard*, Portland, argued the cause for respondent. With him on the brief were David P. Miller, and Davies, Biggs, Strayer, Stoel & Boley, Portland.

Before DENECKE, Presiding Justice, and HOLMAN, TONGUE, HOWELL, BRYSON and SCHWAB, Justices.

TONGUE, J.

This is an action for damages by a union against a stevedore company for interference with a contract between the union and another employer by causing the discharge of union members employed by that employer and the replacement of such employees by members of another union.

The plaintiff union had previously filed a similar complaint also naming as defendants the other employer and union. After a demurrer had been sustained to that complaint, plaintiff filed an amended complaint naming the defendant stevedore company as the sole defendant. Plaintiff appeals from an order dismissing the case following an order striking the amended complaint upon the ground that the court had no jurisdiction over the subject matter as alleged in that complaint.

The question presented for decision is whether the subject matter of this action has been pre-empted by the Congress of the United States by adoption of the Labor Management Relations Act[1] (LMRA) to the exclusive jurisdiction of the National Labor Relations Board (NLRB), even though no remedy may be available to plaintiff union under that Act or before that Board.

Plaintiff's complaint alleges that Willamette-Western Corp. (Willamette) operates floating cranes at the docks in Astoria by agreement with defendant under which its employees are "deemed for all purposes the employees of" defendant; that plaintiff has a contract with Willamette for employment of crane operators under which it has provided operators for

---

[1] 61 Stat. 140, § 8 (1947), 29 USC § 158 (1964).

these floating cranes for five years; that defendant willfully and maliciously terminated the employment of these operators and replaced them with members of Local 50 of the International Longshoremen and Warehousemen's Union (ILWU), thus interfering with that contract and resulting in damages of $750 per day, for which plaintiff demanded judgment, in addition to $100,000 as punitive damages.

It also appears that plaintiff has filed charges of unfair labor practices against defendant with the NLRB arising out of the same controversy and that the Regional Director of the NLRB has filed a formal complaint against defendant as a result of these charges.[2] In addition, it appears that as a result of the jurisdictional dispute between plaintiff union and ILWU over the work of operating these floating cranes, the NLRB has held that employees represented by plaintiff union are entitled to perform such work and that ILWU should refrain from forcing or requiring employers to assign such work to longshoremen.[3]

Plaintiff contends that the trial court erred in dismissing this case for the reason that by doing so it may have denied the "wrongfully terminated floating crane operators any remedy in any forum" and that such a result is contrary to "current decisions of the United States Supreme Court allowing a state court remedy where an NLRB remedy is unavailable."

[2] Complaint filed November 27, 1970, in Case No. 36-CA-1871, Brady-Hamilton Stevedore Company and International Union of Operating Engineers, Local No. 701, AFL-CIO.

[3] Decision February 26, 1970, in Case No. 36-CD-54-2, Brady-Hamilton Stevedore Company and Willamette-Western Corporation, and International Longshoremen and Warehousemen's Union, Local No. 50, and Hoisting and Portable Engineers Local No. 701, International Union of Operating Engineers, AFL-CIO, 181 NLRB No. 51, 73 LRRM 1369.

In support of this contention plaintiff cites *International Union, U.A., A. & A.I.W. v. Russell*, 356 US 634, 78 S Ct 932, 2 L ed 2d 1030 (1958), as holding that there is no federal pre-emption of "wrongful interference with a lawful occupation." Plaintiff also cites *Linn v. United Plant Guard Workers*, 383 US 53, 86 S Ct 657, 15 L ed 2d 582 (1966), as "reaffirming" *United Auto Workers v. Russell, supra,* and distinguishing the rule of federal pre-emption as stated in *San Diego Bldg. Trades Council v. Garmon*, 359 US 236, 79 S Ct 773, 3 L ed 2d 775 (1959). Plaintiff also cites the decision of this court in *Corvallis Sand and Gravel Co. v. Hoisting & Portable Engineers,* 247 Or 158, 165, 419 P2d 38 (1967), as recognizing exceptions to the rule of federal pre-emption where the activity involved is "a merely peripheral concern" to the NLRB or where "overriding state interests" are involved. Finally, plaintiff urges that the state of Oregon has an "overriding interest" under Art I, § 10, of the Oregon Constitution, in which it is provided that "* * * every man shall have remedy by due course of law for injury done him in his person, property or reputation."

It is conceded that the NLRB, in the proceeding before it arising out of plaintiff's charges against defendant and depending upon its determination of the merits of that case, may deny relief to plaintiff, including a denial of back wages to the employees involved. Thus, the first question to be decided is whether, under the rule of federal pre-emption, the trial court had jurisdiction of this case because of that possibility. The further questions to be decided are whether, regardless of that possibility, this case falls within exceptions to that rule in cases involving matters of "peripheral concern" to the NLRB or those involving matters of "overriding state interests."

In *Corvallis Sand and Gravel Co. v. Hoisting & Portable Engineers, supra,* this same union contended that the rule of federal pre-emption should be applied so as to prevent an employer from filing a suit in equity to rescind a collective bargaining agreement and to recover payments made into a union health and welfare fund after the NLRB had held that the union was guilty of unfair labor practices in refusing to bargain collectively with a multi-employer group and in coercing plaintiff into breaking away from that group and signing a separate contract with the union. In affirming the dismissal of the complaint by the employer in that case this court (at pp 163-4) quoted as follows from *San Diego Building Trades Council v. Garmon, supra*:

"* * * Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme. See Garner v. Teamsters Union, 346 US 485, 492-497. It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern. In fact, *since remedies form an ingredient of any integrated scheme of regulation,* to allow the State to grant a remedy here which has been withheld from the Na-

tional Labor Relations Board only accentuates the danger of conflict."

In the same case this court (at p 164) quoted with approval from *I. A. of M. v. Labor Board*, 311 US 72, 82, 61 S Ct 83, 85 L ed 50 (1940), as follows:

"It is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged."

As also stated by the Supreme Court of the United States in *Garmon*, at p 245:

"It is not for us to decide whether the National Labor Relations Board would have, or should have, [concluded that an unfair labor practice existed] * * * When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of State interference with national policy is to be averted."

These principles, as stated in *Garmon*, are still followed by the United States Supreme Court. See *International Longshoremen's Local 1416 v. Ariadne Shipping Co.*, 397 US 195, 200, 90 S Ct 872, 25 L ed 2d 218 (1970).

■ Thus, it follows that if an "activity" is "arguably subject" to the jurisdiction of the NLRB under § 7 or § 8 of that Act, both the state and federal courts must defer to the exclusive jurisdiction of the Board to determine what, if any, remedy may be available to the aggrieved party, whether union or employer. Indeed, in both *Garmon* and in *Corvallis Sand and Gravel Co.* the rule of federal pre-emption was applied even though the plaintiff was left with no apparent remedy in those cases.

■ In this case it is clear that the "activity" of

the defendant of which plaintiff complains is more than "arguably subject" to § 7 or § 8 of the Labor Management Relations Act for the reason that plaintiff not only filed charges with the NLRB that such conduct constituted an unfair labor practice, but the NLRB Regional Director has issued a formal complaint against defendant based upon such charges.[②]

■ Plaintiff's contention that the activity involved in this case falls within the exception to the rule of *Garmon* relating to activities of "merely peripheral concern" to the NLRB is equally unavailing. This case arose out of a jurisdictional dispute between two unions over the work of operating floating cranes. As a result of that jurisdictional dispute defendant, which was under contract with the ILWU to provide longshoremen necessary for the conduct of its business as a stevedore for the loading and unloading of ships, was put in a position in which it was apparently induced to yield to the pressure of that union to request the discharge of members of plaintiff's union as operators of the floating cranes used in these operations.

Thus, the activities of both the unions and the defendant are far from being of "merely peripheral concern" to the NLRB. On the contrary, the fact that these activities are of direct concern to the NLRB is demonstrated by its decision in this jurisdictional dispute and by the complaint issued by its Regional Director against defendant.[③] This is a far different case than that of *Linn v. United Plant Guard Workers, supra,* cited by plaintiff, in which a plant manager of an employer sued a union for libel for matters published during an organizing campaign and in which it was held (at p 61) that such matters are of "a merely

---

[②] See note 2.
[③] See notes 2 and 3.

peripheral concern of the Labor Management Relations Act."

■ Plaintiff's final contention is that this case falls within the further exception to the rule of *Garmon* relating to matters of "overriding state interest."

It may be, as argued by plaintiff, that in *Linn* the United States Supreme Court reaffirmed its previous decision in *International Union, U.A., A. & A.I.W. v. Russell, supra,* decided prior to *Garmon*. It does not follow, however, that under *Russell* a state court would have jurisdiction over this case.

In *Russell* it was not only alleged that the union prevented plaintiff from going to work in a struck plant by mass picketing, but that the union by "threats of bodily harm to Russell and of damage to his property prevented him from reaching the plant gates" (p 636). In referring to that and other similar cases, the United States Supreme Court said in *Linn* (at p 62):

> "In each of these cases the 'type of conduct' involved, i.e., 'intimidation and threats of violence,' affected such compelling state interests as to permit the exercise of state jurisdiction. *Garmon,* supra, at 248. We similarly conclude that a state's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon.*"

In this case, on the contrary, the complaint does not allege "intimidation and threats of violence," as in *Russell*. Neither does it allege "malicious libel," which was also held in *Linn* to be a matter of "peripheral concern" to NLRB, as previously noted.

Instead, we return to the basic nature of the activity which gave rise to the complaint in this case —a jurisdictional dispute between two unions and conduct by the defendant which is claimed by both plaintiff and by the NLRB Regional Counsel to constitute an unfair labor practice under LMRA. We believe that under the rule of federal pre-emption as adopted by the Supreme Court of the United States in *Garmon*, and as binding on all courts, both federal and state, the NLRB has exclusive jurisdiction over the matters alleged by the complaint in this case, regardless of state statutory or constitutional provisions purporting to provide a "remedy for all wrongs."[6] It follows that the trial court did not err in dismissing that complaint.[7]

Affirmed.

---

[6] In holding that plaintiff has no remedy against defendant in the courts of this state we do not undertake to suggest whether plaintiff would or would not have had a remedy against ILWU Local 50 or against Willamette-Western (who were named as additional defendants in plaintiff's original complaint in this case), under LRMA, §§ 303 or 301, 29 USC § 187 or § 185. Cf. Springer v. Powder Power Tool Corp., 220 Or 102, 348 P2d 1112 (1960), and Int. L. and W. Union v. Harvey Aluminum et al, 226 Or 94, 359 P2d 112 (1961).

[7] Plaintiff also asks that this case be remanded to the lower court with instructions to abate further proceedings pending final decision by the NLRB. Under the rule of federal pre-emption as stated in *Garmon*, however, as we understand that rule, the sole test is whether the matters alleged in the complaint are "arguably subject" to the jurisdiction of NLRB. If so, as is clear in this case (for reasons previously stated), the fact that NLRB may later refuse all relief does not confer jurisdiction upon the state court.