Argued July 7, affirmed July 29, 1976, petition for rehearing pending

# NORTHWEST ADMINISTRATORS, INC.,
## *Respondent,*
### *v.*
# WILDISH SAND & GRAVEL CO. et al,
## *Appellants.*

552 P2d 547

*Phil Cass, Jr.,* Eugene, argued the cause for appellants. With him on the briefs were Young, Horn, Cass & Scott, Eugene.

*Thomas Levak,* Portland, argued the cause for respondent. With him on the brief were Carney, Probst & Levak, Portland.

TONGUE, J.

## TONGUE, J.

This is an action by the administrator of a Teamsters Pension Trust Fund established under the terms of a labor agreement to enforce payments by defendants of contributions to that fund as required by that agreement. Defendants appeal from a judgment requiring payment of $25,588.55, plus attorney fees and costs. We affirm.

■ Defendants' sole contention is that the trial court erred in its finding that it had jurisdiction to enforce the labor contract and that "the issues raised by plaintiff's complaint and the resolution of [those] issues * * * did not involve areas of determination that are exclusively or arguably within the jurisdiction of the National Labor Relations Board."

Defendants' brief does not, however, include any abstract of the pleadings for our use in determining what those issues are, as required by Rule 6.24 of the Rules of Procedure of this court. Defendants' brief also sets forth a lengthy "STATEMENT OF FACTS" with no references to transcript pages, exhibit numbers or other sources for any of the facts included in that statement, as required by Rule 6.17.

At the time of oral argument defendants' counsel stated that the reason for this omission was that the case was submitted on stipulated facts. It appears from the trial court file that this case was submitted upon motions by both parties for a summary judgment. Those motions with many attached exhibits, total over 120 pages. Plaintiff's motion includes an eight-page statement of facts, with references to exhibits, which was stipulated to be an accurate statement.

Because of defendants' failure to comply with our rules on this appeal we could properly refuse to consider defendants' brief. *Cf. Elvalsons v. Industrial Covers, Inc.,* 269 Or 441, 443-45, 525 P2d 105 (1974), and cases cited therein. However, in deference to the importance of the issues involved, we shall consider defendants' contentions.

## The facts.

Defendants were members of an employer association which bargained for them with the Teamsters Union on a multi-employer basis. Since 1962 labor contracts negotiated for defendants with Teamsters Local 57 have included job classifications claimed by Operating Engineers Local 701 to be "traditionally theirs," such as heavy equipment operators and mechanics.

On August 8, 1963, the National Labor Relations Board conducted a representation election for employees in the "traditional" operating engineers classifications and certified the Operating Engineers Local 701 as the bargaining representative of such employees throughout the multi-employer bargaining unit. After several months of bargaining, however, no collective bargaining agreement was reached with that union. According to a representative of the employers association, that union then abandoned bargaining for the employees of defendants and took no further action until 1970.

In 1970 Local 701 petitioned the NLRB for an election seeking certification as a representative for employees of defendant Wildish Sand & Gravel Co. in the "traditional" operating engineers classifications. That petition was dismissed. Local 701 nevertheless picketed defendants, who filed unfair labor practice charges with the NLRB.

The NLRB then filed suit for an injunction in the United States District Court, which issued a temporary injunction prohibiting such picketing pending a final determination by the NLRB of the unfair labor practice charges.

Local 701 then entered into a stipulation for a consent judgment and the NLRB issued its Decision and Order directing Local 701 to cease picketing for recognition purposes. The injunction proceeding in the court was then dismissed. At that time the United States District Court found that the NLRB had "certified" the

Teamsters and had refused to certify the Engineers Local 701. In fact, the NLRB had not "certified" the Teamsters, but had found that since 1967 Teamsters Local 57, under collective bargaining agreements, had "represented all of the employees of Wildish." As a result, Local 57 had been "lawfully recognized" by the NLRB, but not "certified" by it.

Representatives of the employers association through which defendants have bargained also have stated under oath that "since at least the commencement of the 1967 labor contract," Teamsters Local 57 had represented "all of the employees in the disputed operating engineers job classifications," and that Engineers Local 701 "has not represented any employees of Wildish." The NLRB, by its complaint and petition for injunction against Engineers Local 701 in 1970, also stated that "Wildish has contracted with and now is contractually bound to lawfully recognize Teamsters Local 57 * * * and * * * a question concerning representation may not appropriately be raised under Section 9(c) of the Act."

For the entire period in question, however, no pension payments were made by defendants for "traditional" operating engineers job classifications to any pension fund. It was stipulated that if the court determined that it had jurisdiction of the subject matter of this action judgment could be entered in the amount of $25,588.55, representing delinquent payments to the Teamsters Pension Trust Fund for the period March 2, 1964, through June 30, 1969.

*The trial court had jurisdiction in this case.*

Defendants summarize their position as follows:

"* * * Where a dispute exists between two labor organizations and an employer over the question of representation of employees of the employer; one labor organization claiming under a series of collective bargaining agreements, the other labor organization claiming under an NLRB certification conflicting with those contracts; and the National Labor Relations Board has

[ 663 ]

for a period of years spanning the entire disputed period taken jurisdiction in one proceeding or another for the purpose of resolving those conflicts; the question of who represents those employees during that period of time is at least arguably subject to the exclusive jurisdiction of the NLRB to the extent that a state court is preempted from resolving those conflicts and placing the employees in one unit or another for the purpose of determining whether or not contributions are due to a trust fund established under the collective bargaining agreement."

The principal cases relied upon by defendants in support of this contention are *I.U.O.E. Local 701 v. Brady-Hamilton,* 258 Or 484, 483 P2d 1303 (1971); *San Diego Unions v. Garmon,* 359 US 236 (1959); *Guss v. Utah Labor Board,* 353 US 1 (1957); *Motor Coach Employees v. Lockridge,* 403 US 274 (1970).

■ We recognize, as held in *Brady-Hamilton* and in *Garmon,* that the Oregon courts have no jurisdiction of a case when the subject matter of the case has been preempted by the Congress of the United States to the exclusive jurisdiction of the National Labor Relations Board and that the test of jurisdiction in such cases is not whether a remedy is available to the plaintiff before the NLRB, but whether the subject matter is "arguably" subject to its jurisdiction under § 7 or § 8 of the National Labor Relations Act, 29 USC § 157, § 158.[1]

As conceded by defendants, however, the Supreme Court of the United States recognized in *Lockridge* what defendants refer to as a "limited exemption to the *Garmon* doctrine" in actions under § 301 of the Labor Management Relations Act, 29 USC § 185, to

---

[1] *I.U.O.E. Local 701 v. Brady-Hamilton,* 258 Or 484, 490, 483 P2d 1303 (1971), and *San Diego Unions v. Garmon,* 359 US 236, 245 (1959).

Section 7 of the National Labor Relations Act, 29 USC § 157, sets forth the right of employees to participate in labor organizations and engage in collective bargaining.

Section 8 of that Act, 29 USC § 158, defines what conduct shall be considered "unfair labor practices."

enforce collective bargaining agreements.[2] Defendants contend that this case does not come within that exemption. We disagree.

In *Lockridge* it was held (at 300) that:

"* * * We have exempted § 301 suits from the *Garmon* principle because of the evident congressional determination that courts should be free to interpret and enforce collective-bargaining agreements *even where that process may involve condemning or permitting conduct arguably subject to the protection or prohibition of the National Labor Relations Act.* The legislative determination that courts are fully competent to resolve labor relations disputes through focusing on the terms of a collective-bargaining agreement cannot be said to sweep within it the same conclusion with regard to the terms of union-employee contracts that are said to be implied in law. That is why the principle of *Smith v. Evening News* [*Smith v. Evening News Assn.,* 371 US 195 (1962)] is applicable only to those disputes that are governed by the terms of the collective-bargaining agreement itself." (Emphasis added)[3]

Defendants say that:

"The instant case is not governed by the terms of the agreement *itself.* The instant case is governed by resolution of a conflict between that agreement and the effect of procedures under the NLRA directly conflicting with

---

[2] 29 USC § 185(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Further, it is well established that state courts have concurrent jurisdiction to apply the "body of federal law" that federal courts are authorized to "fashion" under the above provision. *See Gilstrap v. Mitchell Bros. Truck Lines,* 270 Or 599, 605-06, 529 P2d 370 (1974), *cert denied,* 421 US 1011 (1975), quoting from *Textile Workers v. Lincoln Mills,* 353 US 448, 451 (1957), and citing *Dowd Box Co. v. Courtney,* 368 US 502 (1962), among other cases.

[3] Also, the existence of a remedy before the National Labor Relations Board for an unfair labor practice does not necessarily preclude state court jurisdiction in such a case. *See Carey v. Westinghouse Corp.,* 375 US 261, 268 (1964).

[ 665 ]

the collective bargaining agreement. * * *." (Emphasis theirs)

■ This is an action to enforce the provisions of a collective bargaining agreement requiring contributions to a pension fund for all of defendants' employees. Employees working in what may be considered as "traditional" operating engineer job classifications, such as heavy equipment operators and mechanics, are covered by the terms of that agreement. The terms of that agreement provide that defendants must make contributions to the pension fund for these employees.

It follows that this is an action under § 301 to enforce those terms of this agreement and that this issue in this case is "governed" by those terms. As such, it is within the exemption recognized by *Lockridge* for actions under § 301 and the Oregon courts have jurisdiction in this case despite the fact that this "process may involve condemning or permitting conduct arguably subject to the protection or prohibition of the National Labor Relations Act," as also expressly recognized in *Lockridge.*

What defendants ask is that this court refuse to enforce the terms of the collective bargaining agreement because of past claims by Engineers Local 701. In effect, this would "rescind" its application to employees engaged in those job classifications claimed by Local 701, despite the fact that they are bound by the terms of the agreement. In *Corvallis S. & G. Co. v. H. & P. Eng.,* 247 Or 158, 168-69, 419 P2d 38 (1967), *cert denied,* 387 US 904 (1967), we held that a suit to rescind a collective bargaining agreement is not within the jurisdiction of the Oregon courts, but that they have jurisdiction under § 301 over an action to enforce the provisions of such an agreement.

Defendants cite no authority to the effect that the certification in 1963 by the NLRB of Engineers Local 701 as bargaining representative for the employees did, of itself, remove them from coverage or benefits under the previously existing collective bargaining

agreement with Teamsters Local 57. The 1963 certification empowered Engineers Local 701 to bargain on behalf of these employees in an effort to negotiate a new collective bargaining contract. However, no such contract was ever agreed upon.

The continuing validity of the Teamsters contract after that certification might have been attacked by the filing of an unfair labor practices charge with the NLRB.[4] Defendants, however, did not seek such a remedy and § 10(b) of the National Labor Relations Act, 29 USC § 160(b), provides a six months statute of limitations for the filing of any such charge.

In addition, it appears from the stipulated facts that Engineers Local 701 then abandoned claims of jurisdiction over the employees engaged in these so-called "traditional" operating engineers job classifications. In any event, the manager of the employers association which have represented defendants for purposes of collective bargaining have conceded that at least since 1967 the Teamsters Local 57 has represented all of these employees and that Engineers Local 701 has not represented any of them.

Under these facts we hold that the trial court had jurisdiction over the subject matter of this action as an action under § 301 of the Labor Management Relations Act, 29 USC § 185, to enforce the provisions of a collective bargaining agreement.[5]

Affirmed.

---

[4] See Smith Steel Workers v. H. O. Smith Corporation, 420 F2d 1, 7 (7th Cir 1969).

[5] For other cases holding, under different facts, that courts have jurisdiction under § 301 over actions or suits to enforce payments by employers to trust funds for pensions or health and welfare benefits, see Wishnick v. One Stop Food & Liquor Store, Inc., 359 F Supp 239, 241-42 (ND 111 1973); Thomas v. Blue Coal Corporation, 355 F Supp 510, 513 (MD Pa 1973); International U., United A., A. & A. I. Wkrs v. Textron, Inc., 312 F2d 688 (6th Cir 1963); Local U. No. 641 of Amal. Butcher Work v. Capitol Packing Co., 32 FRD 4, 5 (D Colo 1963).