Argued June 11, affirmed June 30, 1965

MEDAK ET AL *v.* HEKIMIAN ET UX

404 P. 2d 203

*Thomas H. Ryan,* Portland, argued the cause for appellants. With him on the brief were Ryan and Ryan and James J. Kennedy, Portland.

*John Ronchetto,* Portland, argued the cause for respondents. With him on the brief were Mize, Kriesien, Fewless & Douglas and Earl Fewless, Portland.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

HOLMAN, J.

Plaintiffs were real estate agents and leased from defendants in January of 1952 premises for a business office in a building on the southeast corner of Tenth and Broadway in the city of Portland. The lease was for five years with an option to renew for an additional five years. The rental was $100 per month and plaintiffs had the right to cancel the lease at any time by giving thirty days written notice. The parties were not previously acquainted and dealt at arm's length.

In 1954 defendants were approached by the promoters of Lloyd Center, a proposed integrated shopping complex of enormous proportions. They wished to purchase the premises, a portion of which plaintiffs occupied, for inclusion in the planned complex. The transaction was contingent, however, upon getting a release from plaintiffs of their option to renew the lease for an additional five years. As a result, plaintiffs and defendants entered into another contract

whereby defendants agreed to construct another building on the southwest corner of the same intersection on property also owned by them and to rent a portion of the premises to plaintiffs for a period of five years commencing in January 1957 at the expiration of plaintiffs' lease on the premises which was being sold to the Lloyd Center. The rental was to be $100 per month, the same as the rental under plaintiffs' option. The agreement also provided that in the event defendants did not construct the building defendants would pay plaintiffs $5,000 as liquidated damages for their failure to perform.

Defendants failed to erect the building as agreed, and this action was brought to recover the $5,000 provided as liquidated damages for the contract's breach. The defendants appeal from a judgment of $5,000 entered upon a jury verdict.

██ Defendants' first charge of error is that the court improperly struck from their answer allegations relative to plaintiffs' being licensed real estate brokers, that they were in a position of trust and confidence to defendants and that they took advantage of their position. Defendants alleged no facts and presented no proof giving rise to any special duty owed by plaintiffs to them. The relationship between the parties was not that of real estate broker and client. The parties were dealing at arm's length in behalf of their personal interests. Plaintiffs owed no duty to defendants other than that of honesty and fair dealing which any other person would have owed under the same circumstances.

█ Defendants next claim that the initial lease was without consideration because plaintiffs had the right to cancel it upon thirty days notice while defendants were bound for a period up to ten years. While the

consideration on plaintiffs' part is disproportionate to that of defendants, it cannot be said there was no consideration.

The Restatement of the Law of Contracts, § 79, states as follows:

> "A promise or apparent promise which reserves by its terms to the promissor the privilege of alternative courses of conduct is insufficient consideration if any of these courses of conduct would be insufficient consideration if it alone were bargained for."

Illustration 1 under the section reads:

> "A promises B to act as B's agent for three years on certain terms, and B agrees that A may so act, but reserves the power to cancel the agreement at any time. B's agreement is insufficient consideration, since it involves nothing that can properly be called a promise. *Otherwise, if B reserves the power to cancel on thirty days notice.*" (Emphasis ours)

In 1 Williston, Contracts, (3rd ed.) 454, § 115, it is said:

> "It is an 'elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration.' This rule is almost as old as the law of consideration itself. Therefore anything which fulfills the requirements of consideration will support a promise whatever may be the comparative value of the consideration, and of the thing promised.   *   *   *"

■ Defendants urge that where the consideration is so disproportionate it takes only slight evidence of fraud to invalidate the contract and that they were prevented from inquiring into evidence of fraud upon cross

examination of the plaintiff John Medak when the following occurred:

"Q Did you explain to the Hekimians they had no way of holding you there?
"A No, the Hekimians —"

The answer was then interrupted by an objection which was sustained. While this may have been error, it was not prejudicial error as the Hekimians were allowed to testify in detail concerning the conversations relative to the rights of plaintiffs to cancel upon thirty days notice. They testified they objected to the provision and asked plaintiffs why it was there and that plaintiffs told them that one of them was in the armed forces reserve and might be called into the service as the Korean Conflict was then in progress. They testified that with this explanation they were willing to go ahead.

The record is absolutely devoid of any evidence of fraud by plaintiffs. Defendants contend they were just inexperienced Armenians. At the time of this transaction they had been in the cleaning and pressing business in Portland for 34 years and were substantial persons of property with business experience. They owned and operated a motel at the coast worth $80,000 as well as their Portland business. They had an established line of credit at the bank and gave every indication of being highly knowledgable business people.

■ Defendants charge as error the court's failure to instruct the jury that where a tenant rents property on a monthly basis it is a tenancy from month to month and either party has a right to terminate the tenancy on thirty days notice. It was not error to fail to give the instruction as it is obviously irrelevant and in-

44

applicable to the situation. The property was not rented on a monthly basis.

The defendants claim the provision in the contract providing they would pay to plaintiffs the sum of $5,000 as liquidated damages if defendants did not construct the building was in fact a penalty and therefore not enforceable and that the court erred in not so finding as a matter of law.

The decision of penalty or liquidated damages is one of law for the court, 25 CJS, Damages, § 102, page 657. The distinction between a penalty and liquidated damages is that a penalty is for the purpose of securing performance of the contract and liquidated damages is a sum to be paid in lieu of performance. 25 CJS, Damages, § 101c Page 654; *Secord v. Portland Shopping News,* 126 Or 218, 223, 269 P 228 (1928); *Yuen Suey v. Fleshman,* 65 Or 606, 133 P 803 (1913).

Two criteria seem to be paramount in determining whether the sum provided to be paid is for the purpose of securing performance of the contract, and therefore a penalty, or whether it is intended to be paid in lieu of performance, and therefore liquidated damages. At the time of the making of the contract would the sum provided seem to bear any reasonable relationship to the anticipated damages and would the actual damages be difficult or impossible of ascertainment? If both answers are "yes," the sum provided would normally be considered liquidated damages. Restatement of the Law of Contracts, § 339; *Secord v. Portland Shopping News,* supra, at pages 223, 224. The situation must be appraised as of the time when the contract was effected and not as it ap-

pears at some other time, *Secord v. Portland Shopping News,* supra, at page 223.

■ There was evidence from which the court could find that at the time of making the contract plaintiffs were occupying a space 20 feet by 20 feet at a rental of $100 per month. In return for a release of the option for an additional five years defendants agreed to build a new building in the same locality and rent to plaintiffs space therein 20 feet by 50 feet at the same rental for an identical period. The space would be about two and one-half times greater and the building would be new. On the other hand, the frontage would be substantially the same. The agreed value of the five year extension of the lease in the old building which plaintiffs gave up was $100 per month, or a total of $6,000. Would two and one-half times the space in a new building be worth $5,000 more over the five-year period of the extension? The sum is not so grossly disproportionate to the probable actual damages resulting from failure to perform as to require it to be called a penalty.

In looking at the matter at the time of the contract, was the harm that would be caused by the breach incapable or difficult of accurate estimation? Two and one-half years hence would there be other space in the same locality of like size and condition which would serve as a guide to prove plaintiffs' damage? Could the parties be sure that at that time the damage could be accurately estimated? If no space were available, it was possible plaintiffs could suffer actual damage because of loss of business which would not be compensable under the usual measure of damage. There would appear to be nothing reprehensible or unreasonable in the parties agreeing to a sum which would compensate plaintiffs for such actual anticipated loss

in case of breach. It would certainly be actual damage of the most highly speculative type. These imponderables at the time of making a contract would seem to justify the use of a sum as liquidated damages as long as it was not disproportionate to actual anticipated damages.

The trial judge refused to say it was a penalty. We do not disagree.

■ The defendants contended plaintiffs were estopped from asserting any claims for damages under the contract as they claimed plaintiffs told them they were no longer interested in occupying a building at that location. In submitting the matter to the jury the court gave the following instruction:

> "The defendants must establish their affirmative defenses by a preponderance of the evidence, except for the issues of fraud and estoppel. These require more than a mere preponderence of the evidence, and must be established by clear, convincing and satisfactory evidence."

The defendants took exception to this instruction's reference to estoppel. The instruction was unfortunate in view of ORS 17.250(5) which provides that in civil cases the finding shall be according to the preponderance of the evidence. However, we doubt that this fine distinction resulted in any prejudice to defendants' rights, and therefore, under ORS 19.125(2), refuse to reverse for this reason.

There being no prejudicial error, the judgment of the trial court is affirmed.