Argued December 3, 1970, affirmed April 14, 1971

HARTY, *Respondent, v.* BYE, *Appellant.*

483 P2d 458

*Larry C. Hammack*, Portland, argued the cause for appellant. With him on the briefs were Williams, Montague, Stark, Hiefield & Norville, and Preston C. Hiefield, Jr., Portland.

*David G. Frost*, Hillsboro, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, and BRYSON, Justices.

BRYSON, J.

This is an action on a written contract by plaintiff, a licensed well driller, to recover the unpaid balance of the contract price for drilling a well on defendant's property. The plaintiff alleges that he performed all of the obligations required of him under the terms of the contract. The defendant admits the terms and execution of the contract but denies performance on the part of plaintiff and further denies that any sum of money is due plaintiff by defendant. By way of counterclaim, defendant demands judgment against the plaintiff under a provision in the contract for liquidated damages in event the plaintiff failed to complete the well on or before April 1, 1967. Plaintiff filed a general denial to the counterclaim.

The pertinent parts of the contract are as follows:

## "AGREEMENT

"* * * * *

"2. Contractor shall commence to drill said well forthwith upon the execution of this Agreement and shall finish or complete the same no later than April 1, 1967. In the event Contractor fails to complete said well in accordance with the terms and provisions hereof, on or before April 1, 1967, it is agreed that Contractor shall pay unto Owner the sum of $50.00 per day for each day after April 1, 1967, that said well has not been completed as liquidated damages; * * *.

"* * * * *

"4. The well to be drilled by Contractor hereunder shall be a twelve (12″) inch well and Contractor shall provide all necessary casing for the complete depth of said well * * *.

"* * * * *.

"9. The full compensation to Contractor for all the work performed hereunder shall be the sum of $12.00 per lineal foot drilled, and it is agreed by Owner that Owner shall pay for drilling based upon each 100′ of drilling at the rate $6.00 per lineal foot; that is to say, when the first 100′ of drilling is completed, Owner shall forthwith pay the Contractor the sum of $600.00, with a like amount to apply to subsequent units of 100′ of drilling and with a final payment to be made immediately upon completion of drilling computed as follows: $12.00 per lineal foot drilled less all payments previously made by Owner to Contractor."

The case was tried by the court without a jury. Neither party requested special findings of fact. The court entered a general finding that "the plaintiff sustained by a preponderance of the evidence his claim against defendant and is entitled to recover from the defendant the sum of $3,184.00," together with costs and disbursements and entered judgment accordingly. The defendant appeals.

The defendant's first assignment of error is that the judgment of the trial court was erroneous in that such a judgment could only be based upon a finding that the defendant breached her contractual obligation of payment to plaintiff under the terms and provisions of the written contract entered into between them, and there is no evidence in this case of any such breach or default by the defendant.

The court's general findings for the plaintiff carries the weight of a jury verdict, ORS 17.435, and

will not be disturbed on appeal if supported by any substantial evidence. *Kuzmanich v. United Fire and Casualty*, 242 Or 529, 410 P2d 812 (1966).

The evidence disclosed that the defendant owned 74 acres of land in Washington county. Twenty acres were leased to a Mr. Cobb for quarrying rock. On the remaining 54 acres the defendant raised cattle and used the land for pasture. The upper pasture was situated on a slope and consisted of 20 acres; the lower pasture consisted of the remaining 34 acres. Defendant desired to irrigate the pasture land and contacted the plaintiff about drilling a well. After preliminary negotiations, defendant had her attorney prepare a contract which was presented to the plaintiff and executed on December 21, 1966. Plaintiff began the well drilling operation on February 24, 1967. By March 7, 1967, he had drilled and cased the well to a depth of 100 feet whereupon defendant made the progress payment of $600, as provided in paragraph 9 of the contract, *supra*. By March 28, 1967, plaintiff had drilled the well to a depth of 201 feet. The well had been cased with 12″ casing to a depth of 124 feet, of which 118 feet was through "alluvium and unconsolidated material" and six feet into "consolidated material," or hard rock. Although defendant was notified of the well's progress throughout, she made no further progress payment. Plaintiff, however, continued his drilling operation and on April 21, 1967, he had drilled the well to a depth of 357 feet and considered the drilling operation completed. The evidence shows that by this time the plaintiff had permeated a layer of chert, a "greyish material found in water-bearing stratas [sic] in different parts of the Tualatin Valley." This layer of chert ran directly beneath the consolidated material through which the well had been cased and produced

a water flow from the well of 170 gallons per minute. The defendant concedes on this appeal that the well was completed on April 21, 1967, except for the fact that the casing does not extend to the bottom of the well.

Defendant contends that the provisions in paragraph 4 of the contract, *supra*, that the "* * * contractor shall provide all necessary casing for the complete depth of said well" means that the plaintiff unconditionally promised to case the well to its entire depth and that his failure to do so is a breach of such a material part of the contract as to discharge defendant's duty to make the payments as provided therein. In support of this argument, defendant relies on the rule in Restatement 750, *Contracts* § 397:

> "A breach or non-performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty."

However, it is apparent on the face of the rule that its relevance here turns on the correctness of defendant's interpretation of the well casing provision in the contract. We do not reach the question whether plaintiff's performance in casing the well was so material a breach of the contract as to discharge defendant's obligation to pay until it is established that plaintiff's performance in that respect was in fact a breach. Therefore, it is necessary to consider that portion of the contract which refers to the casing of the well to determine whether there was a breach by plaintiff.

■ This court subscribes to the objective theory of contracts. *Springer v. Powder Power Tool Corp.*, 220 Or 102, 348 P2d 1112 (1960); *Rushlight Co. v. City of Portland*, 189 Or 194, 219 P2d 732 (1950). In *Springer*

*v. Powder Power Tool Corp.*, *supra*, this court quoted with approval the theory in Restatement 310, *Contracts* § 230:

> "The standard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean."

We do not think the provision referring to the casing of the well is ambiguous nor, if it were, would such ambiguity aid the defendant as ambiguities in written contracts are resolved against the writer thereof. *Sertic v. Roberts*, 171 Or 121, 136 P2d 248 (1943); *Herrold v. Hartley*, 144 Or 368, 24 P2d 338 (1933); and see *Quillin v. Peloquin*, 237 Or 343, 391 P2d 603 (1964). In this case, defendant had consulted her attorney and had the agreement prepared and submitted to the plaintiff. Had the defendant desired the well to be cased its entire depth, she could have expressly so provided. Instead, it appears she intended that the well be cased to its entire depth only if necessary, preferring to rely on the expertise of the plaintiff, a well driller of some 20 years' experience, to make that determination.

The plaintiff was the only expert called to testify at the trial. His uncontradicted testimony was that the well was drilled in conformance with all of the state requirements.[1] When asked if it would have

---

[1] State regulations concerning the drilling of water wells are promulgated by the State Engineer and found in 1 Oregon Ad-

been possible to "case clear to the bottom," he stated that it could have been done with 10″ casing but that it would not be practical; that this would be a restriction and the casing would have to be perforated (obviously for the purpose of allowing water to enter the casing). When asked if casing the well to the full depth would decrease the amount of water received, he stated that it would be necessary to drill at least a 16″ hole to prevent decreasing the amount of water received.

In defendant's brief and in her testimony, defendant expressed considerable concern over the blasting on the rock quarry adjacent to her property and her fear that the blasting might damage the well and the pump which was installed therein. The record shows, and the trial court could so find, that this concern was not made known to plaintiff until after the contract had been executed and drilling had commenced, and not at the time the contract was entered into. Moreover, upon learning of defendant's concern while the well was being drilled, plaintiff tested the well for adverse effects from the blasting and found none. Plaintiff testified:

> "There was never one time there was any seismic motion on that water from the blasting, because I asked one of Cobb's men to come down and we made an observation of every blast."

This evidence was not disputed.

---

ministrative Rules, ch 119, Division 7, 70-002 *et seq.* The regulations concerning casing water wells are found under Subdivision 1, 71-002 *et seq.*; 71-006 provides as follows:

> 71-006 Sealing of casing. "The casing in all wells drilled into water-bearing strata that are overlain by a consolidated formation (hard sandstone, hard claystone, conglomerate, lava, etc.) shall be unperforated and shall extend at least five (5) feet into the consolidated formation * * *."

It should further be noted that defendant's concern was not so great as to prevent her from using the well for she subsequently installed a pump costing in excess of $5,000, purchased an irrigation system, and used the well to irrigate her farm.

■■ We conclude that plaintiff did not breach the contract, as contended by the defendant, by not casing the well to its entire depth. It follows, then, that there was sufficient evidence from which the trial court could find that the defendant unjustifiably withheld both the progress payments and the final payment required of her under the terms of the agreement, thereby breaching the contract. The trial court did not err in granting judgment for the plaintiff.

The defendant's second assignment of error is that the trial court erred in disregarding the provision in the contract for liquidated damages since plaintiff failed to complete the well by April 1, 1967. Plaintiff contends, however, that under the circumstances of this case, the provision in the contract providing for liquidated damages should not be enforced.

■■ The decision whether to enforce a provision in a contract for liquidated damages upon breach thereof is one of law for the court. *Medak v. Hekimian*, 241 Or 38, 404 P2d 203 (1965). The court must look at the facts of each case to determine whether a provision for liquidated damages is for the purpose of securing performance of the contract or whether it merely provides a sum to be paid in lieu of performance. If the only purpose is to secure performance, the provision will be held unenforceable for it is in the nature of a penalty. If the purpose of such a provision is to provide a sum to be paid in lieu of performance, then to be enforceable it must meet the test set forth in Re-

statement 552, *Contracts* § 339, which was approved in *Medak v. Hekimian, supra*:

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, *and*

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

"* * * * *." (Emphasis added.)

Comment *e.* under this section in the Restatement reads:

"If the parties honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, *when in fact the breach causes no harm at all* or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach is within the rule stated in Subsection (1) and is not enforceable * * *." (Emphasis added.)

The court, by its general findings, refused to enforce the provision in the contract providing for liquidated damages. There is sufficient evidence from which the trial court could conclude that the provision is within the Restatement rule and therefore unenforceable. There was evidence from which the trial court could find that plaintiff's breach caused defendant no damages whatsoever. Defendant's own witness, her son, testified that the upper 20 acres of pasture needed irrigating only in late April or May and that the lower 34 acres needed water only as late as June. When questioned directly on cross-examination, de-

fendant was unable to testify that she purchased any extra hay for the cattle during the period between April 1 and April 21, the time the well remained uncompleted.

■ In view of the evidence tending to show that plaintiff's breach caused defendant no harm at all, or at least none that was incapable of accurate estimation at the time the contract was executed, we cannot say that the trial court's refusal to enforce the provision in the contract providing for liquidated damages was error. Accordingly, the judgment is affirmed.

Affirmed.