Argued May 7, affirmed December 31, 1973, petition for
rehearing denied February 12, 1974

# BABLER BROS., INC., *Respondent, v.*
# HEBENER ET UX, *Appellants.*

517 P2d 653

*Irvin D. Smith,* Burns, argued the cause for appellants. With him on the brief was Riney J. Seeger, Jr., Burns.

*Douglas S. Querin,* Portland, argued the cause for respondent. On the brief were Robert C. Wall, and Reiter, Wall & Bricker, Portland.

HOWELL, J.

Plaintiff filed this action in replevin to recover possession of certain gravel located on premises leased by defendants. The defendants filed a counterclaim for damages for breach of a contract between defendants

and plaintiff. The action was tried before the court without a jury. Findings of fact, conclusions of law and a judgment were entered in favor of plaintiff on its complaint and against defendants on their counterclaim for damages. Defendants appeal.

The plaintiff, Babler Bros., is engaged in road and highway construction. The defendants are the lessees of a rock quarry located near the city of Burns. The plaintiff secured a contract from the Oregon State Highway Department to construct a section of highway near Burns. In December, 1970, the plaintiff and defendants entered into a contract whereby plaintiff agreed to purchase rock from defendants' quarry. The plaintiff agreed to remove the rock, crush and stockpile it on defendants' premises, and pay defendants 15 cents per cubic yard for the crushed rock.

The contract provided in pertinent part:

"AGREEMENT

"KNOW ALL MEN BY THESE PRESENTS, that Robert M. Hebener, and D. LaVerne Hebener, * * * hereinafter referred to as first party, and BABLER BROS., INC., an Oregon Corporation, * * * hereinafter referred to as the second party, and

"WHEREAS, first party has a gravel lease with Clyde Cowing and Ruth Cowing dated the 23rd day of January, 1958, * * * and

"WHEREAS, second party does commercial paving and related work and has need for the type of rock found in said quarry situated on the leased premises for Oregon State Highway Job #92, in the amount of 80,000 tons, now, therefore,

"* * * * *

"FIRST PARTY AGREES:

"1. Grants to the second party the nonexclusive

right to set up a rock crushing plant, pugmill and A.C. Hot Plant on said leased premises and to crush and stockpile rock on said leased premises, for the period December 1, 1970 to and including July 31, 1971, or until the completion of Oregon State Highway Job #92 * * *.

"* * * * *.

"SECOND PARTY AGREES:
"* * * * *.

"23. At the termination by lapse of time specified hereinabove, on cancellation by default of this agreement, any and all rock materials of any nature or kind, being shot quarry rock, crushed rock, or rejected materials, they all shall immediately become the property of the first party without any written instrument to transfer the title thereto, and in case of default, and [sic] advance payment forfeited.

"* * * * *.

"BOTH PARTIES AGREE:
"* * * * *.

"2. In case of default of any of the provisions of this agreement hereinabove set forth by second party or their sub-contractors, Robert Hebener will immediately upon becoming aware of such default notify the foreman in charge at the time personally of the default, and all operations will cease immediately. Default will be explained in a registered letter and mailed to Second Party, BABLER BROS., INC., * * *. In case default is not cured within ten calendar days of date on said registered letter, this agreement will be terminated forthwith, and paragraph 23 will be in immediate effect.

"* * * * *."

The plaintiff's construction job on the Burns Highway was completed in late August, 1971, and at this time approximately 17,000 yards of crushed rock remained at the quarry. Because of various alleged breaches of

the contract, the defendants sent plaintiff several notices of cancellation of the contract and refused to allow plaintiff to remove the remaining rock.

The defendants alleged the above contract as an affirmative defense to plaintiff's action in replevin and further counterclaimed, alleging that the plaintiff had breached that contract in various respects.

The trial judge, in an oral opinion given at the close of the trial, found that plaintiff had title to the rock, that the evidence established only one breach—selling rock in violation of the contract—but that the defendants had failed to prove actual damages as to that breach. In so holding, the court also found that paragraph 23 operated not as a liquidated damage clause but as a penalty clause, and therefore it could not be used to measure damage from the proven breach.

■ We agree with the finding of the trial court that plaintiff had title to the rock.[1]

The portion of paragraph 23 which poses the issue of whether the clause calls for a penalty or liquidated damages is: "On cancellation by default of this agreement" the remaining rock then becomes the property of the defendant.

---

[1] The agreement gave plaintiff the nonexclusive right to quarry and crush rock for plaintiff's use. Thus, the agreement can be characterized as creating a profit *a prendre* in the plaintiff to quarry and remove rock. "Where the grant consists only of the privilege of severing and removing a part of the land itself, the grantor retaining possession, the interest transferred is more properly regarded as a profit a prendre." Sproul et al v. Gilbert et al, 226 Or 392, 413, 359 P2d 543 (1961).

From this characterization, it is clear that Babler obtained title to the quarried rock when it was severed from the land, as the contract did not specifically state when title was to pass. 58 CJS 600, Mines and Minerals § 224; Hohner, An Analysis of Profits *A Prendre*, 25 Or L Rev 217, 223 (1946).

■ The determination of whether a contractual provision constitutes a penalty or liquidated damages is a legal question for the court. *Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965). In *Medak* and in *Harty v. Bye,* 258 Or 398, 483 P2d 458 (1971), we adopted the test as set forth in 1 Restatement 552, Contracts § 339. The material part of the section states:

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

"*  *  *  *  *  *"

■ Applying the test of the Restatement, the facts of this case do not disclose that forfeiture of the gravel was a reasonable forecast of compensation for a breach and that any harm caused by a breach was difficult to estimate.

As to the first requirement, it is apparent that paragraph 23 does not fix an amount of damages which is a reasonable forecast of just compensation for harm caused by a breach. That paragraph establishes that the amount of monetary damage was to be measured by the quantity of gravel existing at the time a default occurs. The amount thus available as compensation for a breach would depend entirely on the amount of gravel that happened to be on hand at the time and would be without any reasonable relationship to the amount of damages from a breach....

Additionally, there is no showing that any harm from a breach would be difficult to ascertain. In their counterclaim, the defendants sought $5,000 actual damages resulting from the alleged breach. The defendants had no difficulty in arriving at the type and amount of damages claimed. Moreover, a contractual provision for a specific sum as damages in the event of a breach is used as a substitute for actual damages because of the difficulty of determining the amount of actual damages. In the instant case, the defendants are not only claiming the gravel, but are also claiming damages for the same breaches.

The evidence showed that plaintiff actually used 25,739 cubic yards of defendants' rock on the highway construction job. Approximately 17,000 additional yards remained on hand at the completion of the job when defendants denied plaintiff access to the premises to remove the remaining rock. There was evidence that it cost plaintiff $1.85 per ton to manufacture the rock. Converting the 17,000 yards to tons discloses that plaintiff had a total investment of approximately $40,000 in the remaining rock. Had the plaintiff refused to take the rock or to pay for it, defendants' damage would have been the net sales price of 15 cents per yard for the remaining 17,000 yards, or a total of $2,550. We agree with the trial court that to allow defendants $40,000 worth of crushed rock when defendants' interest in it could not have exceeded $2,550 would constitute a penalty and is unenforceable.

■ Further, we find that there is substantial evidence to support the trial court's finding that defendants failed to establish their counterclaim that the plaintiff had breached the contract other than the breach above discussed, and in that case failed to show

actual damages. Thus, the defendants have failed to prove some alleged breaches and also have failed to prove that paragraph 23 operates other than as a penalty or that they otherwise were entitled to actual damages resulting from the breach they did prove.

■ The only issue remaining is whether the portion of paragraph 23, which provides that on "termination by lapse of time specified hereinabove" all rock material remaining becomes the property of the defendants, operates to vest title of the rock in the defendants.

The reference in paragraph 23 to a termination date refers to paragraph 1, which provides that the termination date would be "July 31, 1971, or until the completion of Oregon State Highway Job #92." However, on June 15, 1971, the parties executed an interim agreement in which they provided that they mutually agreed to defer any action concerning alleged breaches by the plaintiff until 30 days after completion of the highway project. The project was completed on August 25, 1971, but the defendants excluded the plaintiff from the quarry on September 2, 1971, although according to the interim agreement the defendants promised to take no action concerning alleged breaches until September 24, 1971.

One of the alleged breaches, which was unproven at the trial, was that the plaintiff had not left the quarry in a workmanlike condition. Mr. Pollock, the secretary-treasurer of Babler Bros., Inc., testified that it was his understanding of the interim agreement that plaintiff had 30 days from the completion of the highway job to clean up the quarry after finishing the project and, as part of that process, remove its remaining rock. He further testified that in order to

properly clean up the quarry, the remaining rock had to be removed.

On August 31, 1971, Mr. Hebener prevented the plaintiff from entering the quarry, but on September 1, 1971, the plaintiff was again allowed to work in the quarry and remove rock; finally, on September 2, 1971, which was within the time allowed by the interim agreement, Mr. Hebener again refused to allow the plaintiff to enter, and this action ensued.

Mr. Hebener testified that it was his understanding that the interim agreement extended the underlying contract so that any alleged breaches could be cured after the completion of the highway job by cleaning up the quarry. Also, on September 2, 1971, the defendants sent a letter of default to the plaintiff in which they called for an end to the contract.

The above clearly shows that as of September 2, 1971, the contract between the parties had not terminated, and therefore title to the remaining gravel did not automatically revert to the defendants.

Affirmed.