Argued September 8, affirmed as to Nos. 389-037 and 389-038; reversed as to Nos. 389-034, 389-035 and 389-036, October 2, 1975

SCHLECHT ET AL (as Trustees of the Oregon-Washington Carpenters-Employers Health and Welfare Trust Fund) (No. 389-034), *Appellants, v.* WALSH, *Respondent.*

SCHLECHT ET AL (as Trustees of the Oregon-Washington Carpenters-Employers Pension Trust Fund) (No. 389-035), *Appellants, v.* WALSH, *Respondent.*

SCHLECHT ET AL (as Trustees of the Oregon-Washington Carpenters-Employers Vacation Savings Trust Fund) (No. 389-036), *Appellants, v.* WALSH, *Respondent.*

SCHLECHT ET AL (as Trustees of the Oregon-Washington Carpenters-Employers Apprenticeship and Training Trust Fund) (No. 389-037), *Appellants, v.* WALSH, *Respondent.*

SCHLECHT ET AL (as Trustees of the Oregon-Washington Carpenters-Employers Construction Industry Advancement Fund of Oregon and Southwest Washington) (No. 389-038), *Appellants, v.* WALSH, *Respondent.*

540 P2d 1011

*Paul T. Bailey,* Portland, argued the cause for appellants. With him on the briefs were Bailey, Doblie & Bruun, Portland.

*Carl R. Neil,* of Lindsay, Nahstoll, Hart, Duncan, DaFoe & Krause, Portland, argued the cause and filed the briefs for respondent.

TONGUE, J.

These five consolidated cases are suits in equity by the trustees of funds established under a labor-management contract against a general building contractor who signed that contract. The suits seek to enforce a provision of the contract that such a general contractor must either require that any nonunion subcontractor engaged by him be "bound to all of the provisions of this Agreement" or else maintain records for the subcontractor's employees "and be liable for payment" of contributions for those employees to the

funds established by the agreement for health and welfare, pensions, vacations, apprenticeship and "construction industry advancement."

The nonunion subcontractor paid an amount equal to these "fringe benefits" directly to his employees in addition to their regular hourly wages, which equaled those required by the union contract. No payments, however, were made into the trust funds for any of these benefits.

The trial court held that defendant was required to make such payments to two of the trust funds, but not to the remaining three funds. The basis for that decision was that "it is inequitable" to require defendant to make payments which "amount to double fringe benefits" to the employees of the subcontractor (i.e., trust funds for health and welfare, pensions and vacations), but that "it is equitable" to require that defendant make payments to the last two funds (i.e., apprenticeship and "C.I.A.F."), as "funds which do not accrue benefits directly to the workmen."

Plaintiffs appeal from the decree in the three cases in which the trial court refused to require payments to those three funds. Defendant cross-appeals from the decrees in the two cases in which the trial court ordered defendant to make payments to the other two funds and also from the refusal of the trial court to allow attorney fees in the three cases.

In support of its appeal plaintiffs contend that upon finding that defendant was obligated by the terms of his contract with the union to make "fringe benefit payments" to the plaintiffs for the employees of its nonunion subcontractor, the trial court erred in holding that as a court of equity it could, in effect, modify the terms of the contract by holding that defendant was required to make payments into only two of the five trust funds upon the ground that it

would be "inequitable" to require payments to the remaining three trust funds.

The trial court recognized that "were I in law, having made the findings of fact, I would have no option but to grant judgment in all five cases for the trustees."

In *Wikstrom v. Davis et ux,* 211 Or 254, 315 P2d 597 (1957), we held (at 268) that:

> "Neither courts of law nor of equity have the right or power to make contracts for the parties, or to alter or amend those that the parties have made. It is the intention of the parties, manifested by their words, and not the whim of the court, that must be the guide in construing contracts by the parties thereto. * * *"

To the same effect, see *City of Reedsport v. Hubbard et ux,* 202 Or 370, 385, 274 P2d 248 (1954), holding, in a suit in equity, that:

> "* * * The court has no authority to read into said contract a provision which does not appear therein, nor to read out of it any portion thereof. And this is true, even though the result may appear to be harsh and unjust. The contracts of parties sui juris are solemn undertakings, and in the absence of any recognized ground for denying enforcement, they must be enforced strictly according to their terms. * * *"

■ In these five consolidated cases the trial court properly concluded that:

> "The labor contract required defendant to make fringe benefit payments to plaintiffs."

Nothing in the terms of the contract justified the court's requirement that payments be made by Walsh to some of the trust funds, but not to all of them.①

① The contract provided as follows:

"If a contractor, bound by this Agreement, contracts or

All the funds have equal standing under the terms of the contract. Payments due to each fund are calculated on the same hours worked per employee. The contract specifies identical legal remedies for failure to pay into any one fund or all of them.

Defendant contends that "the record in this case discloses at least innocent misleading of defendant and unclean hands," as well as laches, in that "the union officials failed to tell defendant until months after completion of the job that payment by Jackson [nonunion subcontractor] of fringe benefits directly to his men * * * would nevertheless leave defendant exposed for payment of the same sums into the trusts for the benefit of Jackson's carpenter-employees."

However, the testimony by defendant to support these contentions was contradicted by testimony offered by the union. The trial court rejected these contentions by its findings of fact and conclusions of law. After examination of the record, we agree with those holdings.[2]

Having so held, the trial court had no authority for "equitable reasons" to deny relief to the union in three of the five cases, while granting such relief in the remaining two cases. It follows that we must re-

---

subcontracts, any work covered by this Agreement to be done at the job site of the construction, alteration or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the contractor shall require such subcontractor to be bound *to all the provisions of this Agreement, or* such contractor shall *maintain daily records of the sub-contractors employees job site hours and be liable for payment of these employees wages, travel, Health & Welfare, Pension, Vacation, Apprenticeship and CIAF contributions in accordance with this agreement.*" (Emphasis added)

[2] This testimony and these findings are discussed further below in connection with defendant's cross-appeal.

verse the decree of the trial court in those three cases (cases No. 389-034, 389-035 and 389-036) unless we conclude that defendant is entitled to prevail in his cross-appeal, as next discussed.

██ Defendant's first contention on cross-appeal is that the "Subcontractors Clause" of the Carpenters Master Labor Agreement violates 29 USC § 186, to the extent that it may be applied to require defendant to make contributions to union trust funds for the benefit of employees other than his own, as pleaded in defendant's Fifth Affirmative Defense in each of the five cases. The trial court sustained plaintiffs' demurrers to those affirmative defenses.

It is provided in 29 USC § 186 (a) that:

"It shall be unlawful for any employer . . . to pay, lend, or deliver, or agree to pay, lend or deliver, any money or other thing of value—

"(1) to any representative of any of his employees who are employed in an industry affecting commerce . . ."

An exemption is provided in § 186(c)(5) for certain payment by an employer to trust funds, as follows:

"(c) The provisions of this section shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative, *for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents)*: Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from

occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; * * *." (Emphasis added)

Defendant says that:

"The net effect of 29 U.S.C. Section 186, with respect to contributions to trusts, is to prevent an employer from paying contributions to a trust for the benefit of anyone other than his employees or his employees as part of a pool with employees of other covered employers. The leading case on this point is *Moglia v. Goeghegan*, 403 F.2d 110 (CA 2, 1968), *cert. den.* 349 U.S. 919 (1969). * * *"

Defendant also cites other cases as following what he contends to be the rule as stated in *Moglia.*[9]

Defendant also says that:

"The key point of *Moglia* and its progeny is that 29 U.S.C. Section 186 requires that the employer's payments must be for the benefit of his own employees. It is clear that the payments demanded by plaintiffs and awarded by the Circuit Court in two of these cases fail to meet the test of *Moglia,* because defendant Tom Walsh & Co. is being required under the Subcontractors Clause to make payments into the trusts for the benefit of persons who are employees of Jackson, and not his own employees."

As we read *Moglia,* however, the primary holding

---

[9] The cases cited by defendant include: *In re Typo-Publishers Outside Tape Fund,* 344 F Supp 194 (SDNY 1972), *aff'd* 478 F2d 374 (CA 2, 1973), *cert denied* 414 US 1002 (1973); *Insley v. Joyce,* 330 F Supp 1228 (ND Ill, ED 1971); *Pidgeon v. Brunswick Port Authority,* 324 F Supp 140 (SD Ga 1971); *Local U. No. 529, U. Bro. of Carpenters, etc. v. Bracy Dev. Co.,* 321 F Supp 869 (WD Ark 1971); and *Doyle v. Shortman,* 311 F Supp 187 (SDNY 1970). See also *Caporale v. Di-Com Corp.,* 345 F Supp 153 (ND Ill, ED 1972).

of that decision was that payments by an employer into such a trust fund must be made pursuant to a *written agreement*. (See 403 F2d at 115-16.) The same is true of most of the *Moglia* "progeny." This is in accord with the purpose of 29 USC § 186 to discourage corruption by prohibiting payments by employers to unions, except for those permitted in accordance with restrictions provided by that statute.[4]

In this case the requirement of such a written contract was satisfied in that defendant had a written contract with the union which required that he make contributions to the trust funds for his own employees and also specifically provided that in the event he engaged a subcontractor to do any work covered by the agreement he would be liable for payments into the various trust funds for the employees of such a subcontractor. None of the cases cited by defendant involves such a written contract provision.

In addition, as pointed out in *Kreindler v. Clarise Sportswear Co.*, 184 F Supp 182, 184 (SDNY 1960), also involving payments to a trust fund for employees of a nonunion contractor, in rejecting the defendant's contention that to qualify under 29 USC § 186 such payments must be for the sole and exclusive benefit of the employees of the employer making such payments, the court held:

"* * * There is no basis * * * for the con-

---

[4] We have not overlooked the statement by the court in *Moglia v. Goeghegan*, 403 F2d 110 (CA 2, 1968) (at 116), that "Only employees and former employees of employers who are lawfully contributing to a union pension fund may qualify as beneficiaries of a Section 302 trust." It does not necessarily follow, however, that an employer may not make contributions to a trust fund under facts such as those involved in this case, at least when required to do so by the terms of a written agreement. In any event, as we read *Moglia*, that statement was not necessary to that decision in that case, in which there was no written agreement, and it is not binding upon this court in this case.

struction of the statute on which counsel for Clarise rely. The Funds are not set up employer by employer with the amounts contributed by each employer set apart for the benefit of his employees. They are of a type contemplated by the statute 'for the sole and exclusive benefit of the employees of such employer * * * (*or of such employees * * * jointly with the employees of other employees [sic] making similar payments * * *)*' (Emphasis added)

"The construction of the statute contended for by counsel for Clarise would have most serious and unfortunate consequences. An employer whose employees were engaged in two crafts and who were members of two different unions could not lawfully contribute to the welfare fund of either because neither would be for the benefit of all of his employees.

"The fact that the employees of Clarise's contractors cannot share in the payments based on their payrolls which Clarise has agreed to make does not give Clarise the right to avoid its agreement as illegal."

We agree with that statement.

See also *Bey v. Muldoon,* 223 F Supp 489, 495 (ED Pa 1963), *aff'd,* 354 F2d 1005 (3d Cir 1966), *cert denied,* 384 US 987 (1966); *Budget Dress Corp. v. Joint Board,* 198 F Supp 4 (SDNY 1961), *aff'd,* 299 F2d 936 (2d Cir 1962), *cert denied,* 371 US 815 (1962); and *Doyle v. Shortman,* 311 F Supp 187 (SDNY 1970).

The fact that these cases were decided prior to *Moglia* does not, in our opinion, mean that they are "not of value," as contended by defendant, not only because the decision is not binding upon this court, but because *Moglia* did not involve a subcontractor and there was no written agreement in *Moglia,* as in this case.

For these reasons, we hold that the trial court did not err in sustaining plaintiffs' demurrer to defendant's Fifth Affirmative Defense.

■ Defendant's second contention on cross-appeal is:

"Union officials failed to give defendant any 30-day delinquency notice as required by the Subcontractors Clause as a condition to defendant's liability for contributions for the benefit of a nonunion subcontractor's employees. The Circuit Court erred in failing to sustain this defense."

In support of that contention defendant points out that Article IV of the labor agreement provides that the union will notify the employer "within thirty (30) calendar days of any delinquent payment" to the trust funds.

Defendant says that if any such payments were owed to the trust funds for Jackson's employees "they were due on the 25th of July, 1971 through the 25th day of December, 1971" and that "the evidence set forth in the records shows that no notice was given of any delinquency in payments * * * until November 16, 1972 * * *."

To the contrary, however, the trial court found that:

"6. Defendant was notified by union officials and by their attorney of defendant's responsibility to pay fringe benefit contributions to plaintiffs as required by the union contract.

"7. Defendant was informed by union officials and by their attorney that if Lloyd Jackson did not make the required fringe benefit contributions to plaintiffs that defendant was required under the union contract to make said payments."

We have examined the record and find that it supports these findings, with which we agree. The con-

tract does not require that written notice be given.[9] Several witnesses testified that before the project in question was started it was made clear to defendant that he was responsible for payments into the trust funds for the employees of the nonunion subcontractor. In addition, and perhaps of more importance, at least one of the union representatives testified that at subsequent conferences with defendant on or about August 2 and August 12, 1971, within 30 days of the completion of the project, the defendant was again told that as the general contractor he was responsible or "obligated" for payment of "these items," and that he was "requested to take care of his obligation."

While much of this testimony was denied by defendant and while it may not be as clear as might be desired, after reading the entire record and after according to the trial judge the benefit of his better opportunity to observe the demeanor of the various witnesses as they testified, as is usual in cases in which there is a conflict in the testimony, we agree with the findings of fact by the trial court. It follows that this assignment of error on defendant's cross-appeal must also be denied.

Defendant's final contention on cross-appeal is that the trial court erred in denying payment to defendant for the attorney fees incurred by him in the three cases in which the trial court denied relief to the union. Because, however, we have reversed the

---

[9] The contract provides as follows:

"The Union agrees to notify the employer, person or proprietor within thirty (30) calendar days of any delinquent payment for wages, travel, Health-Welfare and Dental, Pension, Vacation, Apprenticeship and CIAF contributions owed by the subcontractor and to further issue a certificate to the employer when these payments have been made. (Clarification: With respect to fringes the 30 day period starts on the day after the report is due to the trust administrator.)"

decrees of the trial court in those cases it follows that we need not consider this contention.

.For all of these reasons, we reverse the decrees of the trial court in cases Nos. 389-034, 389-035 and 389-036, and affirm its decrees in cases Nos. 389-037 and 389-038.