Argued October 7, affirmed as modified November 6, 1975

# SHAW ET AL, *Respondents, v.* NORTHWEST TRUCK REPAIR, INC., *Appellant.*

541 P2d 1277

*B. G. Birch,* Portland, argued the cause for appellant. With him on the briefs was Frances M. Stamp, Warrenton.

*Jerome B. Buckley, Jr.,* Portland, argued the cause for respondents. With him on the brief were Galton & Popick and Herbert B. Galton, Portland.

TONGUE, J.

This is an action by trustees of a pension trust fund to collect payments claimed to be owed by the defendant as an employer-party to collective bargaining agreements which provided for such payments. The case was tried before the court without a jury under stipulated facts. Defendant appeals from a

judgment in favor of plaintiffs in the sum of $4,-130.07, with interest. Plaintiffs cross-appeal from the denial by the trial court of attorney fees and liquidated damages.

Plaintiffs, as trustees for the Automotive Machinists Pension Trust Fund, administer contributions by employers to that fund. By the terms of collective bargaining agreements defendant agreed to pay contributions to that fund computed at the rate of 20 cents per man hour for each employee for the period of time involved in this case.

Each month the Trust sent a form to the defendant listing the names of the employees eligible for contribution payments. These forms also were filled in to state the rate of contribution as 15 cents per hour, which had been the proper rate for the previous period, instead of 20 cents per hour, which was the correct and required rate for the period in question.

The defendant's bookkeeper then filled in these monthly forms with the number of hours worked by each of the listed employees and computed the amount due for each employee at the rate of 15 cents per hour, as well as the total amount due for that month. He then signed his name to "certify this information is true and correct" and returned the form to the Trust.[1]

Payments were made in this manner and at the incorrect rate of 15 cents per hour for the period from

---

[1] According to the stipulated facts, the defendant's bookkeeper entered only the hours worked by each employee and then returned the form to the Trust, which then computed the amount owing for each employee and sent a billing back to the defendant showing a computation of the amount payable at the rate of 15 cents per hour and defendant then paid the amount of such billings. At the time of oral argument it was pointed out by plaintiffs that this stipulation was not entirely correct. As we view the matter, however, the discrepancy is not material.

January 1, 1968, through April 1972. Beginning in May 1972, payments were made at the correct rate of 20 cents per hour. On April 9, 1973, the Trust demanded payment of $4,130.07 as the amount due for the period in question as a result of computing payments at the correct rate of 20 cents instead of at the incorrect rate of 15 cents per hour. Meanwhile, defendant had failed to accumulate funds sufficient to pay that amount.

It was stipulated that defendant's president did not have personal knowledge of the erroneous monthly calculations throughout the period involved, but had delegated to a bookkeeper "the duty to submit monthly billings to the plaintiffs." In addition, it was stipulated that defendant had available "the labor agreements currently in force at all times." These stated that contributions were to be computed at the rate of 20 cents per hour.

1. *Defendant failed to establish its defense of estoppel.*

Defendant contends that plaintiffs are estopped to demand the payment of $4,130.07 because plaintiffs, who were chargeable with knowledge of the facts, "negligently made a false representation repeatedly over a period of four years of the hourly rate to Defendant, intending that Defendant rely and act upon the same, inducing Defendant to so act, and resulting in a detriment to Defendant *who was ignorant of the truth.*" (Emphasis added) In support of that contention defendant correctly says that there may be an equitable estoppel without proof of an intent to deceive. *Schmeck v. Bogatay,* 259 Or 188, 197, 485 P2d 1095 (1971), and cases cited therein.

Thus, it is recognized by defendant that in order to have a right to rely upon a misrepresentation for the purposes of an estoppel the defendant must have been ignorant of the truth. Defendant says that

this requirement is satisfied in that "although Defendant also had a copy of the contract, it was not under the duty to nor did it assume the obligation to make the computation of the sums due," but that plaintiffs made the monthly computations. Defendant also says that "it was stipulated that *Defendant* had no knowledge of the error but paid each billing as made."

The stipulation, however, went no further than to stipulate that defendant's *president* "did not have, throughout this period of time involved, *personal knowledge of the erroneous monthly calculations*," although defendant had "available" the labor agreements "currently in force." These agreements, signed personally by plaintiffs' president, state clearly that monthly pension contributions were to be computed at the rate of 20 cents per hour, instead of 15 cents per hour.

As stated in Restatement of Agency 2d 591-92, § 272, Comment *b* (1971), although without reference to requirements for estoppel:

> "In situations in which knowledge of a particular fact is relevant to the legal liability of participants in an event, their liability is often affected by their having knowledge of other facts from which persons of ordinary intelligence and prudence would infer the existence of the fact in question or would be led to make such inquiries as would give them knowledge of it. In such cases they have reason to know the fact in question or they should know of it. * * * If an agent has reason to know or should know a particular fact, the principal is affected as if the circumstances were such that the principal would have reason to know or should know the fact, subject to the rules stated in Sections 274-282."

To the same effect, but with direct reference to requirements for estoppel, it is stated in 3 Pomeroy,

Equity Jurisprudence 219, § 810 (5th ed 1941), that:

> "* * * If, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment. * * *"

This court recognized and applied this same requirement for equitable estoppel in *Willis v. Stager,* 257 Or 608, 619-20, 481 P2d 78 (1971), although under somewhat different facts, in holding that:

> "As for estoppel, it is well established that there can be no estoppel unless there was not only reliance, but a right of reliance, and that reliance is not justified where a party has knowledge to the contrary of the fact or representation allegedly relied upon. *Bradford v. Western Oldsmobile,* 222 Or 440, 452, 353 P2d 232 (1960). Thus, in order to establish an estoppel by failure to disclose a claim of title to real property, it must be shown that the party claiming the estoppel had no knowledge, actual or constructive, of the real condition of the title to the property in question. * * *"

To the same effect, see *Kelly v. Heimer,* 312 SW2d 430, 434 (Tex Civ App 1958); and *Peek v. Wachovia Bank & Trust Co.,* 242 NC 1, 86 SE2d 745, 753 (1955); *Scottsbluff Nat. Bank v. Blue J Feeds,* 156 Neb 65, 54 NW2d 392, 401-02 (1952).[2]

■■ Having pleaded estoppel as an affirmative defense, defendant had the burden to prove each element required to establish that defense, including the requirement of ignorance of the truth. The trial court

---

[2] Defendant has cited no cases to the contrary, although citing cases to support its position that other requirements for estoppel were established.

made a finding of fact that defendant "failed to sustain its affirmative defense(s) of estoppel." The record, which shows, among other things, that defendant was a party to contracts which expressly provided for payments at the rate of 20 cents per hour per employee and had those contracts available to it at all times, supports that finding of fact, at least with reference to this required element of equitable estoppel.

We have not overlooked plaintiffs' further contention to the effect that, as an action to enforce payments required by the terms of collective bargaining agreements, this case is controlled by federal substantive law and that federal courts have held that trustees of union pension funds are not subject to the defenses of waiver or estoppel because of their fiduciary duties to the employees who are the beneficiaries of such trusts, citing *Lewis v. Seanor Coal Co.*, 256 F Supp 456 (WD Pa 1966), *aff'd*, 382 F2d 437 (3d Cir 1967), *cert denied*, 390 US 947 (1968); *Lewis v. Harcliff Coal Co.*, 237 F Supp 6 (WD Pa 1965); *Lewis v. Hixson*, 174 F Supp 241 (WD Ark 1959); and *Bricklayers v. Thorleif Larsen & Son*, Civ No. 74-1404, 519 F2d 331, 89 LRRM 3113 (7th Cir 1975). See also *Lewis v. Benedict Coal Corp.*, 361 US 459, 470-71 (1960).

We need not decide that question in this case, however, because we find that it may be decided by application of general principles of equity which presumably form a part of any body of federal law on this subject and which we believe to be compatible with the purpose of the federal statutes involved. See *DeVore v. Weyerhaeuser Co.*, 265 Or 388, 391, 508 P2d 220 (1973); and *Springer v. Powder Power Tool Corp.*, 220 Or 102, 107, 348 P2d 1112 (1960). See also *Textile Workers v. Lincoln Mills*, 353 US 448, 456-57 (1957).

2. *Plaintiffs are entitled to attorney fees, but not liquidated damages.*

The trial court also found that "Plaintiffs are not entitled to liquidated damages or attorney's fees due to Plaintiffs' role in the accrual of this claim." Plaintiffs cross-appeal from this finding.

The Trust agreement includes the following provision:

"Each payment of contributions falling due shall be made promptly when due after which such payment shall be delinquent to the extent that it has not been fully paid. *The parties recognize* and acknowledge that regular and prompt payment of contributions are essential to the performance of this agreement, *that it would be extremely difficult, if not impracticable, to fix the actual expense or damage to the Trust which would result from failure by an individual Employer to pay his contributions in full within the time provided. Therefore, the amount of damage resulting from any such failure shall be* presumed to be the greater of $20.00 for each delinquency or *10% of each delinquent payment,* which amount shall become due and payable to the Trust by the delinquent Employer *as liquidated damages and not as a penalty;* provided, however, the Board of Trustees may waive the payment of any liquidated damages in any particular case upon the establishment of good cause satisfactory to the Board of Trustees. In the event suit is necessary to collect any amount due from an Employer, *the Employer agrees to pay all attorneys' fees and other costs of suit* or collection reasonably incurred by the Trustees." (Emphasis added)

In *Schlecht v. Walsh,* 273 Or 221, 540 P2d 1011 (1975), involving similar pension trusts, we considered a somewhat similar question. In that case the trial court held, under the facts of that case, which also

included conduct by union officials which was contended to be "misleading" to the employer, that it was "inequitable" to require the employer to make payments to three of the funds, but was "equitable" to require contributions to the remaining two trust funds. We reversed, holding that the court had no such power to alter, amend or "read out" any provision of the contract agreed upon by the parties, "even though the result may appear to be harsh and unjust."

■ Similarly, although the "role" of the trustees "in the accrual of this claim" was also "misleading" and although the result in this case may also appear to be "harsh and unjust," as in *Schlecht*, we have previously held that plaintiffs' conduct was not such as to deprive them of their right to enforce the provisions of this trust agreement. This includes the contract provisions for attorney fees and liquidated damages, if otherwise valid and enforceable.

■ The contract provision for attorney fees was clearly valid and requires that plaintiffs be allowed attorney fees "reasonably incurred" in the trial court, although not in this court. See *McMillan v. Golden*, 262 Or 317, 321-22, 497 P2d 1166 (1972). It appears that the parties stipulated that the trial court might determine attorney fees "without testimony of attorneys."

The validity and enforceability of the contract provision for liquidated damages, as applied to the facts of this case, are not so clear. In *Medak v. Hekimian*, 241 Or 38, 44, 404 P2d 203 (1965), and in *Harty v. Bye*, 258 Or 398, 407, 483 P2d 458 (1971), we adopted as a test of the validity and enforceability of contract provisions for liquidated damages the following rule as stated in Restatement of Contracts 552, § 339 (1932):

"'(1) An a g r e e m e n t, made in advance of

breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"'(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, *and*

"'(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

"'* * * * *.' (Emphasis added)" 258 Or at 407.

In *Harty v. Bye, supra* at 406-07, we also said that:

"* * * The court must look at the facts of each case to determine whether a provision for liquidated damages is for the purpose of securing performance of the contract or whether it merely provides a sum to be paid in lieu of performance. If the only purpose is to secure performance, the provision will be held unenforceable for it is in the nature of a penalty. If the purpose of such a provision is to provide a sum to be paid in lieu of performance, then to be enforceable it must meet the test set forth in Restatement 552, *Contracts* § 339, which was approved in *Medak v. Hekimian, supra;* * * *."

■ The contract provision in this case expressly states that it would be difficult to estimate the actual expense or damage to the Trust resulting from the failure of an individual employer to pay his contributions—with obvious reference to the second of the two requirements of the Restatement test. Regardless of whether that contract provision was itself sufficient to satisfy that requirement, there is nothing in the record of this case, by contract provision or otherwise, to satisfy the first requirement of the Restatement test.[2]

---

[2] We do not consider the contract provision that the amount

In *Schlecht v. Bliss,* 271 Or 304, 532 P2d 1 (1975), another pension trust fund case, we held that the trial court erred in failing to award liquidated damages under provisions of the contract involved in that case. In so holding, however, we noted (at 318-19) that there was considerable testimony on that subject in that case. There was no such testimony in this case. See also *Weber v. Anspach,* 256 Or 479, 484, 473 P2d 1011 (1970), another pension trust fund case and *Babler Bros., Inc. v. Hebener,* 267 Or 414, 419, 517 P2d 653 (1973). Cf. *Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972). Under the record in this case plaintiffs were not entitled to an award of liquidated damages.

For all of these reasons the judgment of the trial court is affirmed, except for its refusal to allow attorney fees to the plaintiffs, and the case is remanded for that purpose.

Affirmed as modified.

---

of damage shall be "presumed" to be the greater of $20 or 10 per cent to satisfy the requirement that "the amount so fixed is a *reasonable forecast* of just compensation for the harm * * *." (Emphasis added)