Argued and submitted July 15, 1985; on appeal, affirmed in part, reversed and remanded to redetermine damages; affirmed on cross-appeal April 23, Vermeer's reconsideration and Thatcher's reconsideration denied June 6, both petitions for review denied July 29, 1986 (301 Or 446)

## VERMEER et al,
*Respondents - Cross-Appellants,*

*v.*

## THATCHER et al,
*Appellants - Cross-Respondents,*

*v.*

## CONSTRUCTION AND GENERAL LABORERS UNION, Local 320 et al
*Third-Party Defendants-Respondents.*

(129,101; CA A32209)

717 P2d 1256

Victor C. Pagel, Salem, argued the cause and filed the briefs for appellants - cross-respondents.

Jill Backes, Portland, argued the cause for respondents - cross-appellants and third-party defendants-respondents. With her on the briefs were Herbert B. Galton and Galton, Popick & Scott, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs, trustees of the Oregon Laborer's Employer's Trust Fund, brought this action under section 301(a) of the Labor Management Relations Act (LMRA) (29 USC § 185) and section 502 of the Employment Retirement Income Security Act (ERISA) (29 USC § 1132) to recover unpaid employe benefit contributions payable under a collective bargaining and trust agreement. The trial court awarded plaintiffs $25,919.34 for unpaid contributions, 12 percent interest on that amount from February 28, 1981, and $6,100 for attorney fees, plus costs and disbursements. Defendant Thatcher appeals, and plaintiffs cross-appeal. We affirm in part and reverse in part.

Thatcher (defendant) owns and operates a drilling and blasting business (defendant M.T.D.&B., Inc.). On September 8, 1978, he entered into a laborer's compliance agreement with Local 320 of the Oregon, Southern Idaho and Wyoming District Council of Laborers, under which he agreed to be bound by the terms and conditions of the Master Labor Agreement (MLA) between the council and the Associated General Contractors of America, Inc. The MLA provided that defendant was to contribute to the Oregon Laborer's Employer's Trust Fund, a third-party beneficiary of the MLA established to administer employe fringe benefit payments. No contributions were made, and this action ensued.

■ The trial court found that the compliance agreement, commonly referred to as a pre-hire agreement, was authorized by section 8(f)[1] of the LMRA, 29 USC § 158(f). Section 8(f) provides an exception for the building and construction industry to the general rule that an employer who signs a collective bargaining agreement with a union that does not represent a

---

[1] Section 8(f) provides, in pertinent part:

"It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members * * * because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement. * * * *Provided* * * * [t]hat any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title." (Emphasis in original.)

majority of the employer's present work force commits an unfair labor practice. *NLRB v. Iron Workers,* 434 US 335, 344-45, 98 S Ct 651, 54 L Ed 2d 586 (1978); *Operating Eng. Pen. Trust v. Beck Eng. & Surveying,* 746 F2d 557 (9th Cir 1984). If the employer is primarily engaged in the building and construction industry, the exception applies and, if the agreement has not been repudiated before the union achieves majority status, then the monetary obligations assumed under it are recoverable under section 301 of the LMRA. *Jim McNeff, Inc. v. Todd,* 461 US 260, 103 S Ct 1753, 75 L Ed 2d 830 (1983).

Defendant first assigns as error the trial court's conclusion that he was an employer "engaged in the building and construction industry." He contends that he is a mere supplier of raw materials (rock) and is, therefore, outside the scope of the section 8(f) exception. Accordingly, as an affirmative defense, he asserts that the agreement was illegal and therefore void and unenforceable. *See Kaiser Steel Corp. v. Mullins,* 455 US 72, 102 S Ct 851, 70 L Ed 2d 833 (1982).

■ Defendant's company drills and blasts rock, both in quarries and at specific road sites.[2] Although we assume for

---

[2] Defendant testified on direct examination:

"Q: Tell the judge in your words just what you do, what you do in your business.

"A: I am in the drilling and blasting, and we drill the quarries for roads and for highways. * * *

"Q: In your business do you ever do anything beyond that with the rock?

"A: No.

"Q: Do you ever crush it?

"A: Just drill it and blast it; no crushing. We don't handle it at all, just drill and blast. * * *

"Q: You have mentioned roads, do you blast roads too?

"A: Yes.

"Q: And is what you do there just the same as you would do in a road quarry?

"A: Yes, drill it and blast it, and then they take care of it."

On cross-examination by plaintiffs' attorney:

"Q: Mr. Thatcher, you've stated that you blast roads as well.

"A: Yes.

"Q: What kind of roads please?

"A: Oh, we work on the logging roads mostly."

the purpose of our analysis that drilling and blasting quarry rock is not within the ambit of the building and construction industry, drilling and blasting at specific road sites is, and those engaged in that activity are part of the construction industry. It follows that, in order to prevail on the affirmative defense of illegality, defendant bore the burden of proving that he was primarily engaged in the blasting of quarry rock, rather then blasting at specific road sites. No evidence was offered, however, concerning the percentage of work performed at specific road sites, as compared to that performed in quarries. Accordingly, we conclude that there was sufficient evidence to support the trial court's finding that defendant was primarily engaged in the building and construction industry.

■■ In his second assignment, defendant contends that the trial court erred in finding that he had employes doing work that was covered by the pre-hire agreement, because plaintiffs did not prove that each individual employe for whom contributions were sought was performing the type of work covered.[3] That burden, however, was on defendant. Although section 8(f) pre-hire agreements are authorized only when an employer is engaged primarily in the building and construction industry, no similar limitation restricts the employes covered. It is sufficient that the employes be "engaged (or * * * upon their employment, will be employed) in the building and construction industry." 29 USC § 158(f). That requirement is satisfied if a "substantial part" of the work performed by the employes is in the building and construction industry. *Operating Eng. Pen. Trust v. Beck Eng. & Surveying, supra,* 746 F2d at 564.[4] To avoid liability with respect to a specific employe, therefore, defendant bore the burden of proving that the

---

[3] Defendant's books were audited under protest on April 16, 1981, by a trust fund auditor, who determined that defendant had failed to report 7,565 compensable employe hours to the union, as a result of which he owed $25,194.31 in delinquent fringe benefit contributions to the trust fund. The audit covered the period from September 8, 1978, through February 28, 1981, and did not distinguish between hours worked blasting quarry rock and hours worked blasting for roads.

[4] In *Operating Eng. Pen. Trust v. Beck Eng. & Surveying, supra,* 746 F2d at 563, the court stated:

"We believe that the congressional purpose, which was to balance the Act's policy disfavoring recognition of minority unions against the specialized needs of the construction industry, would be satisfied by a requirement that a substantial part of the work performed by employees covered by a pre-hire agreement be in the building and construction industry. * * *"

employe was not substantially engaged in the building and construction industry. Because there was no evidence offered on this issue, it was not error to hold that all of defendant's employes were so engaged.

Defendant argues in his third assignment that the trial court erred in concluding that "at no time did [he] repudiate the laborer's compliance agreement." He contends that the agreement was repudiated at its inception by his overt noncompliance with the terms of the MLA or, in the alternative, that he expressly repudiated it later.

Section 8(f) pre-hire agreements may be repudiated by the employer at any time before the union achieves majority status among the business' employes. *Jim McNeff, Inc. v. Todd, supra,* 461 US at 271. The repudiation may be express or implied, but it must provide the union with sufficient notice of the employer's intent not to honor the agreement. 461 US at 270-71 n 11. Whether sufficient notice has been given raises a question of fact for the trier of fact. Therefore, we are bound by the trial court's finding, unless there is no evidence to support it. *Illingworth v. Bushong,* 297 Or 675, 694, 688 P2d 379 (1984).

Defendant argues that his continuous noncompliance with the MLA provided sufficient notification of his intent to repudiate. He points to his failure to hire any union employes, his failure to file, or the filing of false, monthly reports specifying the number of compensable hours worked by his employes, and his failure to make monthly contributions to the union trust fund. Although we agree that those acts and omissions evidence overt noncompliance, we hold that defendant did not manifest his intention to repudiate the pre-hire agreement until he submitted his April, 1980, report, discussed below.

Defendant's conduct is similar to that of the employer in *Jim McNeff, Inc. v. Todd, supra.* There, the employer filed monthly reports with the false notation that "no members of this craft were employed during this month." The court held that, by filing the falsified reports, the employer "misled the union of its true intention never to fulfill its contractual obligations" and, consequently, that the employer's conduct did not constitute sufficient notice to the union of its intent to repudiate the contract. 461 US at 270.

Here, defendant failed to file reports from November, 1978, until September, 1979. Beginning in September, 1979, however, he filed four consecutive monthly reports. Although those reports, as in *Jim McNeff*, included the false notation that defendant had no employes, they nevertheless provide evidence in support of the trial court's holding that defendant did not repudiate the pre-hire agreement prior to May, 1980, when the report for April, 1980, was received.

■ Beginning with the one for April, 1980, all of the reports filed by defendant included a notation that defendant would no longer abide by the terms of the pre-hire agreement.[5] We conclude that, as a matter of law, those reports provided the union with sufficient notice of defendant's intention to repudiate the agreement. Therefore, defendant is not liable for amounts claimed with respect to work performed after the union received the April report.

■ On cross-appeal, plaintiffs claim that the trial court erred in holding that liquidated damages provided in the trust agreement[6] were discretionary, and in refusing to award them. Plaintiffs contend that section 502(g)(2) of ERISA, 29 USC § 1132(g)(2),[7] mandates such an award. Although section

---

[5] The report filed in May, 1980, provided:

"We do not take out for employees due to we do not belong to Union Local 320 anymore."

[6] MLA provides:

"* * * [T]he amount of damage to the Fund and Pension Plan resulting from failure to make reports or pay contributions within the time specified shall be presumed to be the sum of 12 percent of the amount of the contribution or contributions due for each delinquent report or contribution."

[7] 29 USC § 1132(g)(2) provides:

"(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

"(A) the unpaid contributions,

"(B) interest on the unpaid contributions,

"(C) an amount equal to the greater of—

"(i) interest on the unpaid contributions, or

"(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under sub-

502(g)(2) does mandate liquidated damages in actions brought under ERISA by a fiduciary for or on behalf of a trust fund, section 502(e)(1)[8] provides that federal courts have exclusive jurisdiction over such actions. Consequently, 502(g)(2) is inapplicable. The trial court's disallowance of liquidated damages was therefore proper.[9] *See Shaw v. Northwest Truck Repair,* 273 Or 452, 460-62, 541 P2d 1277 (1976); *Paddock v. Furtick,* 78 Or App 49, 714 P2d 1068 (1986).

▋ Finally, defendant contends that the award to plaintiffs of attorney fees of $6,100 was too much, and plaintiffs, on cross-appeal, contend that it was too little. We find no error.

On appeal, affirmed in part, reversed and remanded to redetermine damages; affirmed on cross-appeal.

---

paragraph (A),

"(D) reasonable attorney's fees and costs of the action to be paid by the defendant, and

"(E) such other legal or equitable relief as the court deems appropriate.

"For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."

[8] 29 USC 1132(e)(1) provides:

"Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

29 USC 1132 (a)(1)(B) provides:

"(a) Persons empowered to bring a civil action

"(1) by a participant or beneficiary—

"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

29 USC 1132(a)(1)(3) provides:

"(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

[9] Defendant also assigns as error the trial court's finding that this case was brought under ERISA. Although we agree that that was error, it was harmless, because the action was pled in the alternative as arising under section 301(a) of the LMRA.