Argued and submitted December 17, 1986, affirmed on appeal and on cross-appeal
August 10, reconsideration denied September 30, petition for review denied
October 18, 1988 (307 Or 77)

HANNAN et al,
*Respondents - Cross-Appellants,*

*v.*

R. CONCRETE, INC.,
*Defendant - Cross-Respondent,*

ELLIS,
*Defendant,*

*and*

ALLEN et al,
*Appellants - Cross-Respondents.*

(A8410-05824; CA A38236)

760 P2d 256

Thomas M. Triplett, Portland, argued the cause for appellants - cross-respondents. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

James S. Coon, Portland, argued the cause for respondents - cross-appellants. On the brief were Thomas J. Barnett and Aitchison, Imperati, Barnett & Sherwood, P.C., Portland.

No appearance for cross-respondent R. Concrete, Inc.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

.

## BUTTLER, P. J.

Plaintiffs are trustees of several trust funds administered for the benefit of members of the Cement Masons Union. Defendant R. Concrete is a corporation engaged in the business of concrete paving and is owned by defendant Ellis. It and the union are parties to a collective bargaining agreement. Defendants Allen control and manage R. Concrete and, in addition, own Allen Concrete, a concrete paving contractor with a nonunion workforce.

Plaintiffs brought this action under section 301 of the Labor Management Relations Act (LMRA), 29 USC § 185, for an accounting and for specific performance of a collective bargaining agreement between the union and R. Concrete to compel Allen Concrete to make contributions to the trust funds on behalf of its employes in accordance with that agreement. The trial court held that Allen Concrete is the "alter ego" of R. Concrete and is, therefore, subject to the collective bargaining agreement between R. Concrete and the union. Judgment was entered for the trustees against all defendants, except Ellis, in the amount that Allen Concrete would have been obligated to contribute if it had been a party to the collective bargaining agreement, together with interest on the delinquent contributions at the rate of 10 percent, rather than the 18 percent provided in the trust agreements. The court refused to award liquidated damages.

The Allens appeal, contending that the trial court did not have subject matter jurisdiction and, in the alternative, that the ruling on the merits was in error. Plaintiffs cross-appeal, assigning error to the trial court's failure to award interest at the rate provided in the trust agreements and its failure to impose liquidated damages. We conclude that the trial court had subject matter jurisdiction, that it correctly concluded that R. Concrete and Allen Concrete are alter egos and that it acted within its discretion in limiting prejudgment interest and in refusing to award liquidated damages. Accordingly, we affirm.

In 1977-78, the Allens formed a corporation, 3-D Concrete, which entered into a collective bargaining agreement with the Cement Masons Union that was to expire on May 31, 1983. In February, 1983, Earl Allen notified the union that the agreement would be terminated. In March, 3-D went

out of business. In June, Allen commenced operating under the assumed business name of Allen Concrete.

Because Allen Concrete was nonunion, it was unable to bid on jobs that required a union contractor. In order to have the opportunity to bid on such jobs, Allen arranged for one of his employes, Rolph, to sign the articles of incorporation for a new company, R. Concrete. Other than signing the articles, Rolph did not participate in the formation, ownership or management of R. Concrete. Four days after its formation, Rolph signed an agreement transferring his interest in the corporation to defendant Ellis, who is Earl Allen's uncle. Although Ellis did not participate in the operation of R. Concrete, he did sign a collective bargaining agreement on behalf of the corporation with the Cement Masons Union, obligating R. Concrete to make payments on behalf of its employes to the trust funds administered by plaintiffs.

■    Defendants' initial contention is that state courts do not have subject matter jurisdiction to entertain plaintiffs' claims for delinquent contributions to employe benefit trust funds. They argue that plaintiffs' claims are based on the Employee Retirement Income Security Act (ERISA), 29 USC § 1001 *et seq;* therefore, this action must be brought in federal court, because state courts lack jurisdiction to adjudicate most ERISA claims. *See Van De Hey v. U.S. National Bank,* 90 Or App 258, 752 P2d 848 (1988). Plaintiffs insist that their action is brought pursuant to section 301(a) of LMRA, 29 USC § 185(a), which allows state courts to exercise jurisdiction concurrently with federal courts. *Northwest Admin. v. Wildish Sand,* 275 Or 659, 666, 552 P2d 547 (1976).

That question was presented in *Vermeer v. Tomken Construction,* 49 Or App 37, 618 P2d 1301 (1980). The plaintiffs in *Vermeer,* also trustees of an employe benefit plan, sued an employer to recover unpaid contributions that were required to be made under a collective bargaining agreement. The defendant argued that, because the benefit plan was subject to ERISA, the federal courts had exclusive jurisdiction. ERISA contains a mechanism for civil enforcement of its provisions:

> "A civil action may be brought * * * by a participant, beneficiary, or fiduciary * * * to enforce any provisions of this

subchapter or the terms of the plan." 29 USC § 1132(a)(3)(B)(ii).

Federal courts have exclusive jurisdiction over actions that are brought by fiduciaries to enforce ERISA:

"Except for actions under subsection (a)(1)(B) of this section [suits by a participant or beneficiary to recover benefits], the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section." 29 USC § 1132(e)(1).

Both of those provisions were in effect when *Vermeer* was decided, and they remain in effect.

We noted in *Vermeer* that ERISA provided no remedy for trustees seeking to recover delinquent benefit contributions. Thus, the action was not one to "enforce any provision of the subchapter." 29 USC § 1132(a)(3)(B)(ii); 49 Or App at 40. We reviewed the legislative history of ERISA and concluded that "exclusive federal jurisdiction for a claim under section 1132 is required only when the claim is based on a term of the individual plan between the parties which *also* involves an enforceable provision of ERISA." 49 Or App at 40. (Emphasis in original.)

After *Vermeer* was argued, but before our decision was issued, Congress amended ERISA. The Multiemployer Pension Plan Amendment Act (MPPAA), 94 Stat 1295 (1980), added several provisions to ERISA, including 29 USC § 1145:

"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

Although the type of claim made by plaintiffs is enforceable under ERISA, the question remains whether such claims must be brought in federal court, even though they could have been brought under LMRA in state court before the 1980 amendments to ERISA. We think not.

Both the original text of ERISA and the legislative history of the amendments contained in MPPAA indicate that actions for breach of a trust fund obligation arising out of a collective bargaining agreement subject to LMRA are still actionable under LMRA. ERISA provides:

> "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States * * * or any rule or regulation issued under any such law." 29 USC § 1144(d).

Although ERISA was intended to provide greater regulation of employe benefit funds and to provide more comprehensive remedies for breaches of obligations connected with the funds, it was not designed to supersede other federal remedies already in existence, such as LMRA. Neither was MPPAA designed to foreclose those alternative remedies. Staff of Senate Committee on Labor and Human Resources, 96th Cong, 2d Sess, S 1076: The Multiemployer Pension Plan Amendments Act of 1980, at 44 (Comm Print April, 1980).

A recent decision of this court suggests that state courts have jurisdiction to entertain trust fund actions that could have been brought under ERISA. In *Paddack v. Furtick,* 78 Or App 49, 714 P2d 1068, *rev den* 301 Or 240 (1986), trustees of various labor management trusts brought an action under section 301 of LMRA to recover unpaid employer contributions. The issue on appeal was the award of attorney fees to the defendants, who had prevailed in the trial court. We said:

> "Defendants' reliance on ERISA as an alternative basis for attorney fees is misplaced. Although it is true that a court has discretion to award reasonable attorney fees to either party in an action properly brought under section 502 of ERISA, 29 USC § 1132, state courts do not have jurisdiction under section 502 to hear actions by trustees to recover unpaid employe benefit contributions. Section 502(e)(1) provides for exclusive federal jurisdiction over all actions brought under ERISA, except for those brought pursuant to 502(a)(1)(B) by a participant or beneficiary 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' This action, however, *had it been brought under ERISA,* would be one arising under section 502(a)(3), which authorizes actions by fiduciaries to enforce

the terms of trust agreements, under which federal jurisdiction is exclusive. * * * However, this action was not brought under ERISA. Consequently, ERISA does not provide a basis for attorney fees in this action. 78 Or App at 53." (Emphasis supplied; footnote omitted; citation omitted.)

The implication is that the plaintiffs could have brought their claim under either ERISA, in which case federal courts would have exclusive jurisdiction, or LMRA, in which case state courts would have concurrent jurisdiction. We hold that state courts have subject matter jurisdiction over an action to recover delinquent payments to an employe benefit trust brought under LMRA, even though it could also have been brought under ERISA.[1]

We turn to defendants' contention that the trial court erred in ruling that Allen Concrete was the "alter ego" of R. Concrete and was, therefore, bound by the collective bargaining agreement entered into by R. Concrete. That agreement, signed by Ellis on behalf of R. Concrete, provides, in pertinent part:

"Article 5. This Memorandum Agreement shall be binding upon the heirs, executors, administrators, purchasers, assigns, receivers or trustees in bankruptcy of the Employer, and shall be binding upon the Employer regardless of a change of entity, name or association, or joint venture, and shall bind any entity or venture, existing or future, with which the Employer is associated as a principal. If the Employer is a corporation, or other business entity other than an individual, the individual signing this Agreement on behalf of the Employer acknowledges that his signature binds himself individually, as well as the corporation or other business entity."

The alter ego doctrine is a device used by courts and the NLRB to prevent an employer from using a change in corporate structure to avoid its obligations to its employes. It generally applies in situations in which a business ceases functioning and then the principals resume operation under a new name. The federal courts have developed a related theory, the "single employer" doctrine, to tie together the activities of two concurrently operating concerns. The factors that are relevant

---

[1] Our decision accords with the decisions of other courts that have considered the question. *See, e.g., Central States S.E. & S.W. Areas Pen. Fund v. Kraftco,* 589 F Supp 1061, 1072 (MD Tenn 1984); *Trustees for Alaska Hotel v. Hansen,* 688 P2d 587, 591 (Alaska 1984).

to a determination that one business is bound by the labor contract of another business under either the alter ego or single employer doctrines were described in *Iowa Exp. Distribution, Inc. v. NLRB,* 739 F2d 1305, 1310 (8th Cir), *cert den* 469 US 1088 (1984):

> "Although the single employer and alter ego doctrines are related, they are conceptually distinct. * * * The single employer doctrine is a Board creation that treats two or more related enterprises as a single employer for purposes of holding the enterprises jointly to a single bargaining obligation or for the purpose of considering liability for any unfair labor practices. * * * Four factors are considered to determine whether two distinct business entities are to be treated as a single employer for purposes of the National Labor Relations Act: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. * * * No one of these factors is controlling nor need all criteria be present; single employer status is a factual question that ultimately depends upon all the circumstances of the individual case. * * *

> "While the single employer doctrine focuses on whether two or more existing business entities should jointly be held to a single labor obligation, the alter ego doctrine focuses on whether one business entity should be held to the labor obligations of another business entity that has discontinued operations." (Citations omitted.)

*See Vermeer v. Dismantling Contractors,* 90 Or App 74, 751 P2d 796, *rev den* 306 Or 156 (1988).

■ As plaintiffs point out, however, the alter ego doctrine is sometimes applied to a situation in which two businesses are operating concurrently. If a nonunion entity is merely a "disguised continuance" or a "disguised extension" of the unionized company, then the companies may be deemed to be alter egos. *Carpenters Local U. No. 1846 v. Pratt-Farnsworth,* 690 F2d 489 (5th Cir 1982), *cert den* 464 US 932 (1983); *Samuel Kosoff & Sons,* 269 NLRB 424 (1984).

■■ The main difference between the single employer and alter ego situations is that the single employer doctrine requires that the workers of the two entities comprise a single bargaining unit, *NLRB v. Al Bryant, Inc.,* 711 F2d 543, 550 (3d Cir 1983), whereas the alter ego doctrine requires the presence

of anti-union motivation in the change in corporate structure.[2] Defendants argue that, in order to conclude that two entities are alter egos, the union entity must exist before the nonunion entity is formed. Although that is the more common situation, it is not exclusive.

> "The focus of the alter ego doctrine, unlike that of the single employer doctrine is on the existence of a disguised continuance *or* an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operations." *Carpenters Local U. No. 1846 v. Pratt Farnsworth, supra,* 690 F2d at 508. (Emphasis supplied.)

Not only may a company that is a "disguised continuance" of a predecessor be an alter ego, a "disguised extension" may qualify as well.

■ ■   The determination that two business entities constitute a single employer, or that one is the alter ego of the other, is essentially a factual one. The evidence in this case supports a conclusion that the two businesses were alter egos, and we conclude that they were. Allen Concrete and R. Concrete were both operated by Earl and Vicki Allen. Although Earl Allen went to great lengths to disguise the fact that he was a principal in R. Concrete, it is clear that he and his wife were the actual owners of that business. Allen handled the management duties for both companies, including labor relations decisions. The companies performed the same type of work, using the same equipment and some of the same employes.[3]

---

[2] Although *Iowa Express Distributing Inc. v. NLRB, supra,* cites a necessity for anti-union motivation as a component for a finding of alter ego status, a component that is absent in single employer cases, the circuits are split on that issue. *Compare, e.g., Crest Tankers v. National Maritime Union of America,* 796 F2d 234, 237 (8th Cir 1986) (anti-union sentiment required); *Penntech Papers, Inc. v. NLRB,* 706 F2d 18, 24 (1st Cir), *cert den* 464 US 892 (1983) (anti-union sentiment required), with *Goodman Piping Products, Inc. v. NLRB,* 741 F2d 10, 12 (2d Cir 1984) (anti-union animus not necessary); *NLRB v. Allcoast Transfer,* 780 F2d 576, 581 (6th Cir 1986) ("one of the relevant factors"); and *J.M. Tanaka Const. Inc. v. NLRB,* 675 F2d 1029 (9th Cir 1982) (no mention of anti-union sentiment in discussion of requirements for finding of alter ego status). We conclude that the actions of defendants were based on an antiunion motivation, so we need not decide whether that finding was necessary.

[3] The following is an excerpt from the testimony of Earl Allen:
"Q  Who ran R. Concrete?
"A  I did.

■ ■     Defendants also assign error to the trial court's failure to conclude that the collective bargaining agreement was enforceable solely at job sites where the union had demonstrated majority status. An employer who is primarily engaged in the construction industry may execute a collective bargaining agreement, even though a majority of its employes do not wish to be represented. Under certain circumstances, an employer may also repudiate that agreement. *Jim McNeff, Inc. v. Todd,* 461 US 260, 103 S Ct 1753, 75 L Ed 2d 830 (1983). "The repudiation may be express or implied, but it must provide the union with sufficient notice of the employer's intent not to honor the agreement." *Vermeer v. Thatcher,* 79 Or App 100, 105, 717 P2d 1256, *rev den* 301 Or 446 (1986). Defendants argue that, in an alter ego situation, the nonunion entity may repudiate the collective bargaining agreement while the union entity continues to honor it, citing *Painters Local Union No. 164 v. Epley,* 764 F2d 1509 (11th Cir 1985), *cert den* 475 US 1120 (1986). In that case, Epley had established two proprietorships, Epley Coatings, a union shop, and Hisco Construction, which was nonunion. The court held that, for work

---

"Q  Who kept the books?

"A  My wife.

"Q  Where did it do business? Did it have an office?

"A  Office, it was in our home.

"Q  Where was [*sic*] the offices of Allen Concrete?

"A  Same.

"Q  Did Allen Concrete and R. Concrete have the same phone number?

"A  Yes.

"Q  Did they use the same equipment?

"A  Yes.

"Q  Who owned that equipment?

"A  I did.

"Q  Did you have any conversations with Mr. Ellis regarding his role in R. Concrete?

"A  Yes.

"Q  Can you tell me how that came about?

"A  Herb [Rolph] didn't want to do it and I talked to Lester [Ellis] about it.

"Q  What did you say to him?

"A  I said, 'Would you — how would you like to own a concrete company?'

"Q  What did he say?

"A  'Sure.' "

that was being performed by Hisco on a specific job site, Epley had repudiated the agreement:

> "In May of 1978, a confrontation occurred between the union and Epley/Hisco because the [Hisco] job was being conducted with non-union employees. The union established a picket line at the job and it is clear from the record that Epley told the union that he was not going to use union labor at [the job]. The exact date is unclear but it is certain that in May of 1978 Epley informed the union that he was repudiating the prehire agreement insofar as it might apply to the [Hisco] job * * *." 764 F2d at 1512.

In this case, unlike in *Epley,* defendants did not take any action to notify the union that they would not comply with the agreement as to work being performed by Allen Concrete. Here, unlike the proprietor in *Epley,* Earl Allen attempted to conceal the connection between the two entities. Allen Concrete took no affirmative action to repudiate the collective bargaining agreement. As we held in *Vermeer v. Thatcher, supra,* 79 Or App at 105, the failure to hire union employes and the refusal to make contributions to the union trust fund are insufficient to constitute a repudiation. Accordingly, defendants did not repudiate the agreement.

Defendants also assign error to the trial court's failure to find that the employes of Allen Concrete and R. Concrete constitute a single bargaining unit. In a single employer circumstance, the nonbargaining entity cannot be held to the collective bargaining obligation of the bargaining entity unless the combined work forces of the two entities constitute a single bargaining unit. *NLRB v. Al Bryant, Inc., supra,* 711 F2d at 550. That determination is not necessary to a conclusion that the two entities are alter egos.

Plaintiffs cross-appeal, assigning error to the trial court's refusal to award interest at the rate provided in the collective bargaining agreement and the court's failure to award liquidated damages under the agreement. The award of prejudgment interest in an action under LMRA is within the discretion of the trial court. *Intern. Ass'n Bridge, Structural v. Higdon Const.,* 739 F2d 280, 283 (7th Cir 1984). If the court has discretion to award prejudgment interest, it has discretion to fix the interest rate if it awards any. As we pointed out in *Vermeer v. Thatcher, supra,* section 502 (g)(2) of ERISA, 29

USC § 1132(g)(2), provides that, in any action under ERISA in which a judgment in favor of the plan is entered, the court *shall* award an amount equal to the greater of interest on the unpaid contributions *or* liquidated damages provided for under the plan. In that case, as in this, the action was brought under LMRA, not ERISA, and we held that it was not error to disallow liquidated damages, even though the trust agreement provided for them.

■ Here, the trial court awarded prejudgment interest at the rate of 10 percent, which is similar to the formula for assessing liquidated damages under the trust agreement, but declined to award liquidated damages. The court had discretion with respect to the prejudgment interest and was not required to award liquidated damages.[4] We perceive no reason, in the exercise of our *de novo* review, to disturb the trial court's determination.

Affirmed on appeal and on cross-appeal.

---

[4] The liquidated damage provision in this case is almost identical to the one in *Shaw v. Northwest Truck Repair,* 273 Or 452, 541 P2d 1277 (1975). Although defendants do not so contend, it is questionable, given the disposition in *Shaw* with respect to liquidated damages, whether this record would support an award of liquidated damages.